THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MICHAEL SMITH, Defendant-Appellant.

First District (2nd Division) No. 84—209

Opinion filed December 10, 1985.

Steven Clark and Jeffrey Walker, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Joan S. Cherry, Mary Ellen Dienes, and Kevin J. Cawley, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE STAMOS delivered the opinion of the court:[1]

Defendant was convicted of murder in a jury trial and was sentenced to natural life imprisonment. He appeals his conviction and sentence.

---

[1] On July 23, 1985, we entered an order disposing of the appeal under Supreme Court Rule 23. Defendant-Appellant filed a petition for rehearing. An answer to said petition was filed as was a reply. We entered an order allowing the petition for rehearing and on this date have filed an order vacating the Rule 23 order. This opinion is issued as the result of the petition for rehearing.

The evidence adduced at trial showed that on the afternoon of December 18, 1980, defendant and Leon Moore, the State's principal witness, were on the corner of 61st and Calumet in Chicago selling drugs to the occupants of automobiles stopped at the intersection. At approximately 1 p.m., Maurice Dukes arrived on foot at the corner and began talking to several of defendant's customers. Defendant told Dukes that he could not make any sales until defendant and Moore had exhausted their inventory of drugs for the day. After arguing with Dukes, defendant told Moore that he was going to get a gun. Defendant walked to a nearby building where he and Moore kept their drugs and returned with a .38-caliber revolver that the pair kept in the building. Defendant then shot Dukes as Dukes stood in a doorway. Moore testified that he saw defendant fire five shots and saw Dukes fall to the ground.

After shooting Dukes, defendant walked north on Calumet, then returned via King Drive a few minutes later, wearing different clothes than those he had worn when he shot Dukes. Defendant told Moore that he had burned his old clothes and had hidden the gun. The two then returned to the scene of the shooting to determine whether Dukes was dead, and they saw police removing his body. Moore testified that at the time of the shooting he had been selling drugs for 18 months. Moore did not tell police that he had witnessed the shooting until September 1981, although he had been questioned about it before that time.

Derrick Potts testified that he was with Leon Moore at the time of the shooting. Like Moore, Potts did not speak with police about the murder until September 1981, when he and Moore were questioned.

Royal Johnson testified that he had been the manager of defendant's building at the time of the murder. He stated that he had lent defendant a .38-caliber revolver and told him that if he needed it, he could come and get it. Johnson testified that defendant asked for and received the gun early in December and that he had never returned it. Johnson also testified that Leon Moore told him on December 18, 1980, that defendant had shot Dukes. Three weeks later, defendant also told Johnson that he had killed Dukes because Dukes had been competing with defendant for drug customers. Johnson did not speak with police about the shooting until September 1981, when he became concerned that the murder weapon would be traced to him.

Expert testimony revealed that Maurice Dukes had been shot five times with a .38-caliber weapon. All five bullets were recovered from the scene and were found to have been fired from the same gun. After a lengthy investigation, the police arrested defendant at 59th and

Calumet on September 9, 1981. The murder weapon was not recovered.

The jury found defendant guilty of murder. Although he was eligible for the death penalty, defendant was sentenced to natural life imprisonment.

■■ Defendant first contends that he was not proved guilty beyond a reasonable doubt because the testimony of the State's witnesses was inconsistent and unbelievable. It has long been settled that it is the function of the jury to determine whether the State has met its burden of proving defendant guilty of the crime charged. (*People v. Winfield* (1983), 113 Ill. App. 3d 818, 826, 447 N.E.2d 1029.) "[A] reviewing court may not substitute its judgment for that of the trier of fact on questions involving the weight of the evidence or the credibility of the witnesses [citation] but will reverse only if the evidence is so improbable, impossible, or unsatisfactory as to raise a reasonable doubt of defendant's guilt. [Citations.]" (113 Ill. App. 3d 818, 826, 447 N.E.2d 1029.) Slight discrepancies in a witness' testimony do not render the evidence insufficient to sustain a conviction. 113 Ill. App. 3d 818, 826, 447 N.E.2d 1029.

In the present case, defendant argues that the testimony of the State's witnesses is unreliable because none of them came forward for nine moths following the murder and because several of them had criminal charges pending against them. Defendant also points to minor discrepancies between the stories of the witnesses. We find that the evidence against defendant was not "so improbable, impossible, or unsatisfactory as to raise a reasonable doubt of defendant's guilt."

Although Leon Moore was not an impeccably credible witness, his testimony was unequivocal. He stated that he saw defendant kill Maurice Dukes. In addition, Royal Johnson testified that he had lent defendant a gun of the type used in the murder and that defendant later told him that Dukes had been competing with defendant for drug sales. The fact that these witnesses did not come forward with their information until the police discovered that they had witnessed the crime does not affect their credibility to a degree which renders the evidence insufficient to support the jury's finding of guilty. (See *People v. Baggett* (1983), 115 Ill. App. 3d 924, 932-33, 450 N.E.2d 913.) Neither do the witnesses' criminal records render their testimony so unbelievable as to require reversal. The jury was informed of the witnesses' records and their past dealings with the police and was able to consider this information in reaching its decision.

■ Defendant's second objection is that he was denied his right to a fair jury trial because the State exercised six of its peremptory

challenges during *voir dire* to exclude blacks from the jury. However, the record indicates neither the race of the prospective jurors excused nor which party excused those jurors. In addition, at the time defense counsel objected to the State's allegedly discriminatory use of peremptory challenges, only three jurors had been empaneled, two of whom were black, a fact noted by the court in ruling against defendant's objection. We find that defendant has failed to establish that the State discriminatorily excluded blacks from the jury. See *People v. Flowers* (1985), 132 Ill. App. 3d 939, 478 N.E.2d 524.

■ Defendant's third objection is that the prosecutors made prejudicial comments during opening and closing arguments. However, defendant failed to object with specificity in his post-trial motion to all but two of these comments, and these errors have therefore been waived.

The defendant objected at trial and on appeal to the following comments:

(1) The State, in its opening remarks, noted that this case would take the jury to a "very rough part of Chicago." According to the prosecutor, the setting for this crime was an area where drugs are sold on the street in broad daylight. The prosecutor also said that the evidence would show that the defendant and eyewitness Leon Moore were on the street selling drugs when the shooting occurred.

(2) In its closing argument the State repeated some obscene remarks made by defendant. The prosecutor also said that the defendant had "pounded his chest like an animal."

(3) During its rebuttal, the State referred to the defendant as "Mr. Sneer" and said that the defendant was sneering at the jury.

(4) The State said that defense witness, Derrick Potts, had been brought in to confuse the jury.

(5) In its closing argument, the prosecutor referred to a deal between Derrick Potts and a deceased assistant State's Attorney.

(6) The State suggested that Derrick Potts testified for the defense because he and the defendant had "a deal going."

(7) The prosecutor noted that defense counsel stopped his cross-examination of Leon Moore when he discovered that he could not "shake Moore's testimony."

(8) The State commented upon the fact that the defendant had produced no evidence to contradict Leon Moore's testimony.

(9) The prosecutor said that the "good people" of the defendant's neighborhood could not come forward to testify because they were afraid to do so.

To preserve an error for review, a defendant must object both at trial and in a written post-trial motion. (*People v. Caballero* (1984), 102 Ill. 2d 23, 31-32, 464 N.E.2d 223; *People v. Thomas* (1983), 116 Ill. App. 3d 216, 220, 452 N.E.2d 77.) Moreover, in raising the objection, a defendant must be specific. He can not merely allege ambiguously in boilerplate language that a prosecutor made inflammatory or prejudicial remarks to the jury. (*People v. Young* (1985), 133 Ill. App. 3d 886, 893-94, 479 N.E.2d 494; *People v. Camp* (1984), 128 Ill. App. 3d 223, 232, 470 N.E.2d 540; *People v. Thomas* (1983), 116 Ill. App. 3d 216, 220, 452 N.E.2d 77.) Rather, the defendant must recite the specific improper remarks made by the prosecutor. It is important to raise such objections with sufficient specificity in a post-trial motion, because that is the only point at which the judge has an opportunity to realistically assess the cumulative effect of errors that have occurred at trial. Unless the court is fully apprised of the specific instances of prosecutorial misconduct, it can not make an informed ruling on the defendant's motion. *People v. Thomas* (1983), 116 Ill. App. 3d 216, 220-21, 452 N.E.2d 77.

In light of the foregoing standard, it is clear that the defendant waived most of his objections to the State's remarks. In his post-trial motion, the defendant cited the following errors:

"The Trial Court erred in allowed the prosecution to make remarks in their opening statement concerning drug sales involving the victim and the Defendant whereas the prejudicial affect outweighed any probative value and the need to prove motive was suspect [*sic*].

The Trial Court erred in allowing the prosecution to refer to the Defendant in closing and rebuttal remarks as a drug dealer and consistently and unnecessarily highlighted those prejudicial remarks.

\* \* \*

That the prosecution improperly made rebuttal remarks about defense counsel and use of testimony of conversation between Derrick Potts and decease [*sic*] Assistant State's Attorney John Motussamy, where no remarks were suggested, referred to, or invited such comment in closing argument of defense counsel.

That the prosecution in rebuttal consistently made numerous improper remarks over objection and after being advised by the Trial Court to cease such remarks.

Closing argument of prosecution improperly referred to Defendant as a drug dealer.

That the Trial Court erred in not declaring a mistrial due to cumulative improper closing and rebuttal arguments of the prosecution.

The Trial Court erred in not granting a mistrial after the prosecution stated in closing arguments his personal views and beliefs as to what the jury should consider."

■■ ■ With two exceptions, the defendant's assertions were too broad to call the trial court's attention to the alleged errors. The defendant did cite with specificity his objection to the State's remark about a bargain between Derrick Potts and a deceased prosecutor. However, defendant's objection to this comment was sustained by the trial court, and the jury was immediately admonished to disregard the remark. Consequently, we find that the remark was not so prejudicial to defendant as to require a reversal of his conviction. *People v. Cox* (1979), 71 Ill. App. 3d 850, 858-59, 389 N.E.2d 1238.

■■ A second objection raised by the defendant at trial and again with some degree of specificity in his post-trial motion was the State's reference to drug sales carried on by the defendant. The defendant set forth this allegedly improper comment specifically enough so that it would be isolated from the rest of the State's opening remarks. Therefore, the defendant has properly preserved this error for the purpose of review.

Although the defendant has preserved his objection, he fails to persuade us that the prosecutor's remark was improper. This is so because the statement fell within the bounds of fair comment upon facts in evidence. At trial, the court overruled defendant's objection to the State's remark about drug sales because the prosecutor intended to adduce evidence that the defendant and the deceased were fellow drug dealers. In fact, the State did adduce evidence that the defendant had killed Maurice Dukes because Dukes attempted to usurp some of defendant's drug trade. It is well established that the prosecutor is free to tell the jury in his opening statement what evidence he expects to adduce at trial (Illinois Pattern Jury Instructions, Criminal, No. 1.03 (2d ed. 1981); See also *People v. Witted* (1979), 79 Ill. App. 3d 156, 166, 398 N.E.2d 68.) Since the prosecutor in this case simply commented upon facts in evidence, his remark was not objectionable.

■■ Defendant's fourth objection is that he was improperly denied access to State's witness Leon Moore's address in violation of his sixth amendment right to confront witnesses against him. Leon Moore had testified against defendant at a prior trial, which resulted

in defendant's conviction for a different murder. As a result, Moore had been threatened with death, so his address was withheld from defendant.

The purpose of releasing the name and address of a witness is to assist defense counsel in the investigation of the witness and to enable counsel to "place the witness in his proper setting." (*United States v. Navarro* (7th Cir. 1984), 737 F.2d 625, 633.) However, where the State has established that revealing the address of the witness would jeopardize his health and safety, the witness' address can be withheld. *People v. Lewis* (1974), 57 Ill. 2d 232, 237, 311 N.E.2d 685.

In the instant case, no evidence was presented concerning danger to Moore. The trial court agreed to withhold Moore's address based upon the assertions of the prosecution that Moore had complained of threats. However, it appears that defense counsel was given the opportunity to interview Moore, but Moore refused to speak with them. It cannot be said that this would have changed if defense counsel had been given Moore's address.

Neither did the withholding of Moore's address affect defense counsel's ability to place the witness "in his proper setting." Defense counsel was able to cross-examine Moore and elicit the fact that he was a drug dealer with an extensive criminal record. Furthermore, defense counsel's cross-examination revealed that Moore was currently confined in the witness quarters of the Cook County jail. Defense counsel had no restriction on their exploration of Moore's background and potential bias. Therefore, we find that no prejudice to defendant resulted from the trial court's refusal to disclose Moore's address.

■ Defendant's fifth objection is that the State failed to reveal that it had made a bargain with its chief witness, Leon Moore, in exchange for Moore's trial testimony. The State contends that Moore was promised relocation in exchange for his testimony at defendant's sentencing hearing but that no bargain had been struck with Moore in order to induce him to testify at defendant's trial.

The defendant argues that it is unlikely that the State would strike a deal with Moore in exchange for his testimony at a sentencing hearing but promise Moore nothing in return for his testimony at defendant's trial. According to the defendant, such a situation is incredible since Moore would need relocation after the defendant's trial, not after a sentencing hearing. Relocation after a sentencing hearing would be unnecessary because the least severe sentence that the defendant could have received was natural life in prison. Confined to the penitentiary, the defendant would be unable to seek vengeance

upon Leon Moore, so Moore would not need to change locations.

It is true, as defendant notes, that the knowing use of perjured testimony by a prosecutor results in the denial of due process and requires that the defendant be granted a new trial. (*United States ex rel. Washington v. Vincent* (2d Cir. 1975), 525 F.2d 262, 267.) This rule applies whether the perjury concerns the substance of the witness' testimony or only facts that bear upon his credibility. (*Napue v. Illinois* (1959), 360 U.S. 264, 269, 3 L. Ed. 2d 1217, 1221, 79 S. Ct. 1173, 1177.) Promises made by the State in exchange for testimony are a crucial element in assessing the witness' credibility. Where the State uses false testimony in this regard to enhance the witness' credibility, a new trial must be granted if it is reasonably likely that the perjury affected the outcome of the case. *Napue v. Illinois* (1959), 360 U.S. 264, 272, 3 L. Ed. 2d 1217, 1222-23, 79 S. Ct. 1173, 1178-79.

In his testimony at defendant's trial, Leon Moore denied that he had made a bargain with the State. If he was, in fact, promised something in exchange for his testimony, and the State allowed him to lie on the stand, then the defendant was deprived of due process. Resolution of this issue depends upon whether there is sufficient evidence in the record to support the conclusion that Leon Moore made a deal with the State in exchange for his trial testimony.

The burden of proving that the State knowingly used perjured testimony lies with the defendant. (*People v. Bassett* (1974), 56 Ill. 2d 285, 293, 307 N.E.2d 359.) In this case, defendant offers as proof both circumstantial and testimonial evidence. Defense witness Derrick Potts testified that the police suggested to him and Moore that they could receive lenient treatment in exchange for their testimony against the defendant. Potts stated further that the police threatened to charge him and Moore with murder if they refused to testify at defendant's trial. Potts, now in prison on a manslaughter conviction, said that he agreed to testify against the defendant in another case.

As circumstantial evidence of a bargain between Moore and the State, the defendant observes that Moore waited nine months to implicate him in the murder of Maurice Dukes. Additionally, the defendant notes that Moore was a recalcitrant witness who had to be arrested in order to secure his appearance at trial. Finally, defendant finds it implausible that the State promised to relocate Moore in exchange for something as inconsequential as his testimony at a sentencing hearing.

Defendant has failed to carry his burden of proving that the State knowingly used perjured testimony. A majority of the evidence offered by the defendant is circumstantial. However, circumstantial evi-

dence is not, in itself, sufficient to prove that a prosecutor knowingly used perjured testimony. See *People v. Bassett* (1974), 56 Ill. 2d 285, 293, 307 N.E.2d 359. *People v. Harris* (1973), 55 Ill. 2d 15, 17, 302 N.E.2d 1.

■ Testimonial evidence offered by the defendant is more persuasive but still fails to establish that the State allowed its witness to lie on the stand. According to Derrick Potts, Leon Moore told him that the police would drop criminal charges pending against both Moore and Potts if they promised to testify against the defendant. Potts did not witness a conversation between Moore and a State's Attorney in which Moore agreed to testify in exchange for leniency or relocation. Moreover, Leon Moore denied having made a bargain with the State in exchange for his trial testimony. While neither Moore nor Potts was a particularly believable witness, evidence offered by the defendant to show that Moore made a deal with the State was effectively countered by Moore's denial. Consequently, the record does not demonstrate that the State used perjured testimony, and the defendant does not deserve a new trial on this point.

■■ The defendant's sixth objection is that the court improperly admitted an out-of-court statement made by Leon Moore, used at trial to bolster the witness' sagging credibility. The evidence in controversy is a statement made by Leon Moore to his acquaintance, Royal Johnson, shortly after the murder of Maurice Dukes. After Leon Moore testified that he saw the defendant shoot Maurice Dukes, the State put Royal Johnson on the stand. On cross-examination, defense counsel asked Johnson if he had ever talked to Leon Moore about the murder of Maurice Dukes. Johnson said that he and Moore had discussed this topic on one occasion. Then on redirect examination, the State asked Johnson to relate the substance of his conversation with Moore. According to Johnson, Moore said that the defendant had shot Maurice Dukes.

The State contends that the defendant has waived his objection to Moore's prior consistent statement because he failed to cite the error with sufficient specificity. At trial and in his motion, the defendant did object to the admission of Moore's statement but not on the same grounds that he urged on appeal. On appeal, the defendant contended that Moore's statement was improperly admitted to bolster the witness' sagging credibility. At trial and in his motion, the defendant argued that Moore's out-of-court statement was inadmissible hearsay.

As noted earlier, a defendant must cite errors with specificity at trial and in a post-trial motion in order to properly preserve them for review. (*People v. McGrew* (1984), 128 Ill. App. 3d 464, 469, 470

N.E.2d 1157.) The purpose of this rule is to encourage the airing of objections in the trial court, where they can be handled most effectively. All errors should be brought to the attention of the trial judge so that he can make an informed ruling on their cumulative impact. *People v. Thomas* (1983), 116 Ill. App. 3d 216, 220-21, 452 N.E.2d 77.

In the present case, the alleged error was brought to the attention of the trial judge. The defendant objected at trial to the admission of Moore's statement, and he raised the issue specifically in his post-trial motion. However, the defendant urged different grounds for his objection in the trial court than he did on appeal. An objection on specific grounds waives the right to object later on other grounds. (*Security Savings & Loan Association v. Commissioner of Savings & Loan Associations* (1979), 77 Ill. App. 3d 606, 611, 396 N.E.2d 320.) Therefore, defendant has failed to preserve his objection for review.

Despite the fact that defendant has waived the issue, however, we can review this objection under the plain error doctrine. (87 Ill. 2d R. 615(a).) In a number of cases, the Illinois Appellate Court has reviewed the propriety of testimony used to bolster the credibility of a witness although the defendant had failed to properly preserve the error. (See, *e.g., People v. Andino* (1981), 99 Ill. App. 3d 952, 954-55, 425 N.E.2d 1333; *People v. Hudson* (1980), 86 Ill. App. 3d 335, 340, 408 N.E.2d 325; *People v. Gray* (1977), 47 Ill. App. 3d 1026, 1032, 365 N.E.2d 501.) The improper bolstering of a witness' credibility has been deemed plain error because corroboration by repetition " 'preys on the human failing of placing belief in that which is most often repeated.' " *People v. Hudson* (1980), 86 Ill. App. 3d 335, 340, 408 N.E.2d 325.

Evidence of a statement made by a witness out of court but harmonizing with his testimony is inadmissible except where he is charged with recent fabrication or his opponent raises an inference that he has a motive to testify falsely. (*People v. Powell* (1973), 53 Ill. 2d 465, 474-75, 292 N.E.2d 409.) Whether Leon Moore's prior consistent statement was admissible in this case depends upon the degree to which his cross-examination by defense counsel can be characterized as a charge of recent fabrication or improper motive.

Illinois cases are not in precise agreement on what constitutes a charge of recent fabrication. Some courts have found that even a subtle suggestion of fabrication or improper influence will justify the admission of a prior consistent statement. In *People v. VanZile* (1977), 48 Ill. App. 3d 972, 980, 363 N.E.2d 429, the court said that a charge of recent contrivance arises from negative evidence that the witness did not speak of the matter at a time when it would have been natu-

ral for him to do so. In *People v. Rosario* (1978), 65 Ill. App. 3d 170, 174, 382 N.E.2d 31, the court found that a charge of recent fabrication arose from the fact that defense counsel had established that the witness was addicted to heroin. In the *Rosario* court's judgment, defense counsel implied that because the witness was a heroin user at the time of his arrest, his testimony was fabricated so that he would be released from custody and could thus indulge in his drug habit.

When it is judged in light of the foregoing cases, defense counsel's cross-examination of Leon Moore might seem on its face to be a charge of recent fabrication. The thrust of counsel's cross-examination was that despite ample opportunity to step forward, Leon Moore waited nine months to inform police that the defendant had killed Maurice Dukes. In other words, Moore failed to speak when it would have been natural for him to do so. Furthermore, defense counsel clearly suggested that Moore had been promised leniency in exchange for his testimony. In fact, during cross-examination, Moore said that a criminal charge pending against him had been dropped after he talked to the police about the death of Maurice Dukes.

Other circumstances militate against a finding that the defense counsel raised an inference of recent fabrication, however, and on balance, it is clear that Moore's prior consistent statement was inadmissible. This is so because on redirect examination, Leon Moore recalled that a drug charge against him was dropped before he had implicated the defendant in the murder of Maurice Dukes. Moreover, Moore explicitly denied that the State had promised him anything in exchange for his testimony. In cases where a promise of leniency by the State has been deemed a motive to fabricate testimony, it was undisputed that the witness had struck a bargain with the government. (See *People v. Powell* (1973), 53 Ill. 2d 465, 475, 292 N.E.2d 409; *People v. Blackwell* (1979), 76 Ill. App. 3d 371, 377-78, 394 N.E.2d 1329.) Conversely, where the witness denied having made a deal with the State, as Moore did in this case, then there is no charge of recent fabrication or inference that the witness had a motive to testify falsely. *People v. Tidwell* (1980), 88 Ill. App. 3d 808, 811, 410 N.E.2d 1163.

■ Having found that Moore's out-of-court statement was improperly admitted, we conclude that this is reversible error. The danger in prior consistent statements is that a jury is likely to attach disproportionate significance to them. People tend to believe that which is repeated most often, regardless of its intrinsic merit, and repetition lends credibility to testimony that it might not otherwise deserve. (*People v. Hudson* (1980), 86 Ill. App. 3d 335, 340, 408 N.E.2d 325.) For this reason, several courts have found that the erroneous admis-

sion of a prior consistent statement constitutes reversible error. *E.g., People v. Tidwell* (1980), 88 Ill. App. 3d 808, 811, 410 N.E.2d 1163; *People v. Buckley* (1976), 43 Ill. App. 3d 53, 56, 356 N.E.2d 1113.

 The admission of a statement used to bolster the sagging credibility of a witness is reversible error when the witness' in-court testimony is crucial. (See *People v. Tidwell* (1980), 88 Ill. App. 3d 808, 812, 410 N.E.2d 1163.) Even if sufficient competent evidence was introduced to establish a defendant's guilt beyond a reasonable doubt, there is still reversible error when the improper admission clouds the evidence to such a degree that it is impossible to tell whether the jury relied on it. (*People v. Hudson* (1980), 86 Ill. App. 3d 335, 341, 408 N.E.2d 325.) Perhaps the most critical fact in determining the degree to which a prior consistent statement deprived a defendant of a fair trial is whether the statement itself had a bearing upon his guilt or innocence. *People v. Hudson* (1980), 86 Ill. App. 3d 335, 340, 408 N.E.2d 325; *People v. Gray* (1977), 47 Ill. App. 3d 1026, 1033, 365 N.E.2d 501.

In the present situation, Leon Moore's testimony was crucial to the State's case since he was the only eyewitness to the shooting. Furthermore, the credibility of Moore's testimony was shaken significantly by the fact that he was an admitted drug dealer who had waited nine months to come forward with his information. Clearly, the introduction of Moore's prior consistent statement was important in making his testimony more believable. In addition, the jury's reliance on Moore's out-of-court statement was made more likely by the fact that the prosecutor mentioned it in his closing argument. Finally, Moore's statement was highly prejudicial since it bore directly on the issue of the defendant's guilt.

In light of the foregoing, the judgment of the trial court is reversed and the case remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

HARTMAN and BILANDIC, JJ., concur.