2021 IL App (2d) 190174-U
No. 2-19-0174
Order entered May 11, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of McHenry County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 14-CF-967 |
| RUBEN POPOCA-GARCIA, | ) ) | Honorable Sharon L. Prather, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE McLAREN delivered the judgment of the court.
Justices Jorgensen and Schostok concurred in the judgment.

**ORDER**

¶ 1    *Held*:    Although the prosecutor improperly shifted the burden during closing argument by stating that in order to acquit defendant, the jurors would need to find that the State's witnesses were lying, such comment was not plain error because the evidence was not closely balanced and the error did not affect the fairness of the trial or challenge the integrity of the judicial process; the victim's testimony was not improper hearsay where her testimony was offered not for truth of the matter asserted, but to show why she went to the police station and the child advocacy center. The trial court is affirmed.

¶ 2    After a jury trial, defendant, Ruben Popoca-Garcia, was found guilty of aggravated criminal sexual assault (720 ILCS 5/11-1.60(d) West 2014)) of his girlfriend's niece, J.C. The trial court sentenced defendant to four years' imprisonment. On appeal, defendant argues that the State

committed plain error by 1) shifting the burden during closing argument by stating that in order to acquit defendant, the jurors would need to find that the State's witnesses were lying, 2) introducing into evidence prejudicial hearsay including prior consistent statements and opinion testimony intended to bolster the victim's credibility and 3) depriving defendant of a fair trial due to the cumulative impact of the State's errors. For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4                                    A. Charges

¶ 5      The State charged defendant with aggravated criminal sexual assault (720 ILCS 5/11-1.60(d) West 2014)). The indictment alleged that on or about August 23, 2013, defendant committed the offense of aggravated criminal sexual assault in that defendant, who was 17 or older, "knowingly committed an act of sexual penetration with J.C., who was at least thirteen years of age but under seventeen years of age when the act was committed, in that said defendant placed his penis in the vagina of J.C., [and] that the defendant was at least five years older than J.C., and that the defendant acted for the purpose of the sexual arousal of the defendant."

¶ 6                                    B. Trial

¶ 7      The jury trial was held on October 2 and 3, 2018. J.C. who was 18 years old at the time of trial, testified as follows. In August of 2013, when J.C. was 13 years old, she lived in Harvard, Illinois with her mother and "step-dad," her two brothers, her aunt, Guadalupe, her aunt's two children and the defendant, who was her aunt's boyfriend. The apartment had two bedrooms. J.C., her "parents," and her two brothers slept in one bedroom. Guadalupe, her two children, and defendant slept in the other bedroom.

¶ 8      On July 14, 2014, J.C. went to the Harvard Police Department and made a report. The prosecutor asked J.C., "Can you go through what happened that day that made you end up going

to the police station to make the report?" J.C. replied that Guadalupe was in the living-room closet crying and J.C. asked her "what was wrong." Guadalupe said that J.C. had "something to do with [defendant]." Guadalupe also told J.C. that "she was mad at [J.C.] and she told J.C. to leave and that she did not want to see J.C. anymore.

¶ 9     J.C. left the apartment and went down the stairs. As J.C. was going down the stairs, her neighbor Denise and Denise's 18-year-old daughter, Olivia, saw J.C. crying and asked J.C. what was wrong. J.C. eventually told Denise and Olivia "I was raped by [defendant]." Denise and Olivia responded that what J.C. had told them "wasn't okay," and that J.C. "had to go to the police and report it." Denise took J.C. to the police department, and J.C. told the police about what she told Denise and Olivia. After speaking with the police, J.C. went to Denise's apartment because the police told her she was "not allowed to go home." J.C.'s brothers also went to live in Denise's apartment. A day or two after she went to the police department, she participated in an interview at the Child Advocacy Center and spoke with a woman about what defendant had done to her. After J.C. spoke with police she did not see defendant anymore.

¶ 10     J.C. testified that she went to the Magic Waters amusement park with defendant, Guadalupe, and some of Guadalupe's children. While J.C., defendant, and her cousins were in the lazy river ride, defendant came up behind J.C. and hugged her. Defendant's hand touched J.C.'s "boob" above her clothes, and he looked at J.C. and smiled. A second incident occurred in the defendant and Guadalupe's bedroom. J.C.'s siblings and cousins were on the floor facing the television playing a video game on the "Wii" system. There were two beds in the room. J.C. sat on one bed, behind the kids playing video games, and defendant sat on the other bed. J.C. testified that Guadalupe went to the bathroom, J.C. stayed on the bed, and defendant "came close to me, and he started touching me." Defendant touched J.C.'s "legs and boobs" over her clothes.

Defendant told J.C. to be quiet and not to tell Guadalupe. J.C. did not remember how much time had passed between the Magic Waters incident and this incident in the bedroom.

¶ 11    J.C. testified that a third incident occurred in defendant's vehicle when she and defendant went to a car wash. Defendant had asked J.C. to ask her mom if she could go to the car wash with him. J.C. did not recall what kind of car defendant drove. The car wash had individual stalls for each vehicle and allowed customers to wash their own vehicles. When J.C. and defendant arrived at the car wash, defendant got out of the car and entered the car on J.C.'s side. Defendant then moved "his hands all over [J.C.]." Defendant touched J.C.'s "boobs, and then he went down on [J.C.'s] vagina. *** [Defendant] started outside [of her vagina] and then went inside." Defendant touched J.C. this way for a "couple of minutes." After defendant put his finger in J.C.'s vagina, he "inserted his penis" inside her vagina, "started moving," and kept touching her. Defendant stopped "[w]hen he was about to cum. *** Defendant grabbed a piece of paper that he had in the car, and did it there." J.C. did not notice or recall whether there were a lot of people at the car wash. Defendant told J.C. not to tell her mom or Guadalupe and that if she did, he would blame her.

¶ 12    J.C. testified that a fourth incident occurred in the kitchen of Guadalupe's apartment. While Guadalupe cleaned the bathroom, defendant and J.C. cleaned the kitchen. In the kitchen, defendant "pulled his pants down, and he pulled [J.C.'s] down, and he put his penis in [her]." Then defendant "started moving." When Guadalupe approached the kitchen, "[defendant] quickly pulled it out and acted like nothing was happening." J.C. pulled up her pants. These incidents all occurred when J.C. was 13-years old.

¶ 13    During cross-examination, J.C. testified that no one else was in the apartment at the time of the kitchen incident, and J.C. did not scream for Guadalupe.

¶ 14     On re-cross examination, J.C. testified that she did not tell her mom or Guadalupe what had happened because she was afraid of them "being on [defendant's] side and not believing [her]."

¶ 15     Guadalupe testified that at the time of trial she lived in Wisconsin and had six children. Defendant was the father of her three youngest children. Guadalupe met defendant in June and she was pregnant with their first child in August 2013. Guadalupe and defendant were not married. In June 2013, Guadalupe moved into an apartment in Harvard, Illinois with defendant and J.C.'s mother. In June 2013, J.C. and her brothers lived in Mexico. In August 2013, she and her brothers moved into Guadalupe's apartment.

¶ 16     Guadalupe testified that she never talked to defendant, J.C.'s mom, or J.C. about why J.C. and her brothers moved out of the apartment. Defendant abruptly left the apartment and went to Mexico around the time that J.C. and her brother moved out, just after J.C. went to the police station and reported the incidents. Guadalupe did not "know what was going on with [defendant]." Guadalupe and defendant's son was born in March 2014. Defendant returned in January or February 2015, and shortly thereafter Guadalupe became pregnant with twins. At some point after defendant came back to the apartment, he told Guadalupe that he "had been with" J.C. Guadalupe testified that this meant that defendant told her "he had sexual relations" with J.C. Defendant told Guadalupe that J.C. took off her shorts. Defendant asked Guadalupe for forgiveness and told Guadalupe that she was too trustful and that she should have been watching J.C. Guadalupe never saw "anything wrong with [defendant and J.C.]."

¶ 17     During cross-examination, Guadalupe testified, "I started to suspect something, [but] not because I had actually seen anything inappropriate."

¶ 18     During redirect examination, Guadalupe testified that when defendant left Havard, she suspected it was because defendant's mother was sick. Guadalupe also clarified that although she

did not suspect anything, she wondered if something was going on between defendant and J.C. What Guadalupe wanted "to know [was] if there was something going on."

¶ 19    The State rested and defendant presented no witnesses.

¶ 20    The jury found defendant guilty of aggravated criminal sexual abuse. On March 6, 2019, the court sentenced defendant to four years' imprisonment. Defendant filed a timely notice of appeal on March 6, 2019.

¶ 21                                    II. ANALYSIS

¶ 22                              A. Plain-Error Analysis

¶ 23    We initially note that defendant acknowledges that he did not object to any of the alleged errors or raise the issues in a posttrial motion and thus forfeited all of the issues he raises on appeal. See *People v. Sebby*, 2017 IL 119445, ¶ 48. Yet, defendant urges us to reverse his conviction and remand the case for retrial based on the plain-error doctrine.

¶ 24    Illinois Supreme Court Rule 615(a) provides that insubstantial errors "shall be disregarded" but that substantial or what have become known as plain errors "may be noticed although they were not brought to the attention of the trial court." Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1967). As Rule 615(a) indicates, a reviewing court may exercise discretion and excuse a defendant's procedural default. *Sebby*, 2017 IL 119445, ¶ 48. The plain-error doctrine bypasses normal forfeiture principles and allows a reviewing court to consider unpreserved error where either: (1) a clear or obvious error occurs and the evidence is so closely balanced that such error threatens to tip the scales of justice against the defendant, regardless of the seriousness of the error; or (2) a clear or obvious error occurs and is so serious that it affects the fairness of the defendant's trial and challenges the integrity of the judicial process, regardless of the closeness of the evidence. *Id*. In both instances, the burden of persuasion remains on the defendant. *People v. Herron*, 215 Ill.2d

167, 187 (2005). Further, where there is no error at all, there can be no plain error. *People v. Johnson*, 218 Ill. 2d 125, 139 (2005).

¶ 25                               B. Closing Argument

¶ 26     Defendant argues that, during closing rebuttal argument, the State committed plain error by shifting the burden of proof by telling the jury that in order to acquit defendant, it would need to find the State's witnesses lied. During rebuttal closing argument the prosecutor stated:

> "Well, apparently, the take-away from all that, what they expect you to believe is that [J.C.] is a liar, and [J.C.] made this entire thing up. That's not just what they expect you to believe. That's what they need you to believe in order to find Defendant not guilty.
>
> * * *
>
> In order for you to believe that this didn't happen, then you have to believe that not just one, but two people, are lying here, Guadalupe and [J.C.], and there is no reason from either of them for you to believe that."

Defense counsel did not object to these remarks, and defendant did not include the issue in his posttrial motion. However, defendant argues the State committed plain error under both prongs. First, we must determine whether error occurred. The State argues that no error occurred because the prosecutor's remarks did not shift the burden to defendant to prove his innocence. We agree with defendant that the prosecutor's comments improperly shifted the burden of proof to defendant.

¶ 27     Though the State is given wide latitude in closing arguments, it is not allowed to misstate the law or facts of the case, and it is not allowed to diminish its burden of proof. *People v. Carbajal*, 2013 IL App (2d) 111018, ¶ 29. Thus, it is improper for a prosecutor to argue that in order to believe the defendant or to acquit the defendant the jury must believe that the State's witnesses are

lying. *People v. Miller*, 302 Ill. App. 3d 487, 497-98 (1998) (holding that the prosecutor's argument was improper where he stated, "to believe that [the defendant] did not commit this murder *** you have to think that [the State's witnesses] all got together and *** they are lying[.]"). Arguing that in order to acquit the defendant the jury must believe that the State's witnesses are lying is a misstatement of law and a serious error which shifts the burden of proof. See *People v. Wilson*, 199 Ill. App. 3d 792, 797 (1990). See also *People v. Ferguson*, 172 Ill. App. 3d 1, 12 (1989) (holding that the prosecutor improperly shifted the burden of proof to defendant where he stated, "to find the Defendant not guilty of the charges before him, you have to believe he told you the truth. You have to feel [other defense witnesses] told you the truth. And that all of [the State's witnesses] are liars and fools.").

¶ 28　Here, the prosecutor's statements conveyed an improper message: defendant carried a burden of proof to establish his innocence, and to meet his burden of proof, defendant was required to show that the State's witnesses had lied. Clearly, defendant was not required to present any such proof, and the jury was not required to make any such finding. See *id*. Thus, we determine that error occurred during the prosecutor's closing rebuttal argument and the State should have exhibited candor in this regard.

¶ 29　Although we have concluded that the State improperly shifted the burden of proof to defendant during closing arguments, we must also determine whether this error is reversible under either prong of the plain-error doctrine. Defendant contends that it is, both because the evidence is closely balanced and because the error denied him a fair trial. We hold that any error that occurred does not require reversal pursuant to either prong of the plain-error doctrine.

¶ 30　Under the first-prong of the plain-error doctrine, defendant must establish that the evidence was so closely balanced that this error threatened to tip the scales of justice against defendant,

regardless of the seriousness of the error. See *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007). To determine whether the evidence was closely balanced, we "evaluate the totality of the evidence and conduct a qualitative, commonsense assessment of it within the context of the case." *Sebby*, 2017 IL 119445, ¶ 53. Defendant argues that the evidence was closely balanced because the State presented no witnesses or physical evidence to corroborate J.C.'s testimony.

¶ 31    We disagree that the evidence was closely balanced. Only two witnesses testified, both on behalf of the State. J.C. testified that, on two occasions, defendant inserted his penis into her vagina, once at the car wash and again in the kitchen of Guadalupe's apartment. Further, Guadalupe testified that defendant admitted to her that he had sexual relations with J.C. and asked Guadalupe for forgiveness. The guilty verdicts indicate that the jury found the witnesses' testimony credible. Accordingly, the evidence was not closely balanced, and any error by the State during closing rebuttal argument is not reversible under the first prong of the plain-error doctrine.

¶ 32    Defendant also argues that the error committed by the prosecutor amounts to plain error under the second prong of the plain-error doctrine. Thus, defendant must establish that this error was so serious that it affected the fairness of defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence. See *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007). "[O]nly an extraordinarily serious error will render a proceeding 'unfair' " for purposes of the second prong. *People v. Johnson*, 2017 IL App (2d) 141241, ¶ 51.

¶ 33    The misstatements in the prosecutor's rebuttal closing argument were not so serious as to meet this standard. For one thing, the remarks were isolated, constituting merely 2 paragraphs of the State's 30-plus-page closing argument, including the rebuttal, and defense counsel took the opportunity to explain to the jury the flaws in one of the misstatements. We also note that defendant does not dispute that the jury instructions properly articulated the law regarding the State's burden

of proof and were delivered to the jury orally and in writing by the judge. The judge properly instructed the jury that closing arguments are not evidence and that defendant remains innocent throughout the trial and jury deliberations, and the presumption of innocence is not overcome unless the jury is convinced by the evidence that defendant is guilty beyond a reasonable doubt; thus, there was no threat that the jury was under any misapprehensions about the applicable law. See *People v. Glasper*, 234 Ill. 2d 173 (2009) (where the trial court properly instructed the jury, our supreme court declined to conclude that a prosecutor's improper argument was so prejudicial that the jurors ignored the instructions and based their decision on such argument). See also *People v. Garcia*, 2019 IL App (2d) 161112, ¶ 47 (this court held that a prosecutor's improper argument did not amount to plain error where the trial court properly instructed the jury and the improper argument "constituted a small portion of the State's closing argument"). For these reasons, defendant has not demonstrated second-prong plain error.

¶ 34    Defendant cites *People v. Carbajal*, 2013 IL App (2d) 101130, *People v. Buckley*, 282 Ill. App 3d 81 (1996), *People v. Yonker*, 256 Ill. App. 3d 795 (1993), and *Wilson*, 199 Ill. App. 3d 792, to support his argument that the prosecutor's improper comments warrant plain error reversal. In *Carbajal* and *Buckley* the appellate court held that the prosecutor's improper arguments constituted first-prong plain error because the evidence was closely balanced. *Carbajal*, 2013 IL (2d) 101130, ¶ 46, *Buckley*, 282 Ill. App. 3d at 88-89. Here, we determined that the evidence was not closely balanced. Thus, *Carbajal* and *Buckley* are distinguishable from this case.

¶ 35    In *Yonker*, in finding reversible plain error, the appellate court reasoned that to " 'misstate the burden of proof or standard of review, to any extent, compromises the fairness of the judicial process and shall not be tolerated.' " *Yonker*, 256 Ill. App. 3d at 799 (quoting *Wilson*, 199 Ill. App. 3d at 797). In *People v. Euell*, 2012 IL App (2d) 101130, we stated that "this statement in *Wilson*,

and therefore *Yonker*, understates the defendant's burden to establish plain error." *Id.* ¶ 21. We reasoned that in those cases the appellate court "understate[d] the defendant's burden to establish plain error." *Id.* We explained that contrary to the holdings in *Yonker* and *Wilson*, "in accordance with the plain-error rule, we will reverse only if the State's comments were so inflammatory or so flagrant that defendant was denied a fair trial." *Id*. at ¶ 22. Here, we conclude that the prosecutor's comments did not deny defendant a fair trial. Thus, *Yonker* and *Wilson* are not applicable here.

¶ 36                        C. Prior Consistent Statements

¶ 37    Next, defendant argues that the State committed plain error by introducing into evidence prejudicial hearsay, including prior consistent statements and opinion testimony intended to bolster the victim's credibility. As with the previous issue, defense counsel has forfeited this issue because he failed to object to the alleged improper testimony and failed to include this issue in his posttrial motion. Defendant again argues that the testimony at issue rises to the level of plain error. Our first step in our plain error review is to determine whether error occurred. See *Johnson*, 218 Ill. 2d at 139 (2005). Defendant's claim is based on the following exchanges between the prosecutor and J.C. during direct examination. Specifically, defendant takes issue with the following italicized testimony.

"Q. Okay, so Olivia and Denise came out and saw you on the stairs.

A. Yes.

Q. What were you doing on the stairs?

A. I was crying.

Q. And what happened.

A. They asked me what was wrong, and I told them that it was nothing, and then they just kept on asking me until I told them, *and they told me that what I had told them wasn't okay*, that we had to go to the police and report it.

Q. And, generally, what did you tell them was wrong?

A. *That I was raped by [defendant].*

Q. So, Denise and Olivia said that you needed to go to the police department; right?

A. *Yes.*

Q. Did you go to the police that day?

A. I did.

Q. Where was your mom at the time?

A. She wasn't home.

Q. So, who took you to the police department?

A. Denise.

Q. And when you went to the police department, did you talk with the police officers about what you had told Olivia and Denise?

A. *Yes, I did.*

Q. And after you spoke with the police officers, did you go home to that same apartment that day?

A. No, I didn't.

Q. Where did you go after that?

A. Denise house, my neighbor's.

Q. And why did you go there?

A. Because I wasn't allowed to go home.

Q. Is that what the police told you?

A. *Yes, they did.*

\* \* \*

Q. Okay. And a day or two after you talked to the police at the police department, did you go and participate in an interview at the Child Advocacy Center?

A. *Yes, I did.*

Q. Okay. And was this just a room where you spoke with a woman about what [defendant] had been doing?

A. *Yes.*"

¶ 38     Generally, a witness's prior consistent statements are inadmissible to corroborate the trial testimony of that witness because they serve to unfairly enhance the witness's credibility. *People v. Temple*, 2014 IL App (1st) 111653, ¶ 34. However, this rule does not apply to statements of identification. *People v. Shum*, 117 Ill. 2d 317, 342 (1987). Section 115-12 of the Code of Criminal Procedure of 1963 (the Code), titled "Substantive Admissibility of Prior Identification," provides:

"A statement is not rendered inadmissible by the hearsay rule if (a) the declarant testifies at the trial or hearing, and (b) the declarant is subject to cross-examination concerning the statement, and (c) the statement is one of identification of a person made after perceiving him." 725 ILCS 5/115-12 (West 2018).

¶ 39     "Hearsay" is a statement, other than a statement made by the declarant while testifying at the trial or hearing, offered into evidence to prove the truth of the matter asserted. Ill. R. Evid. 801(c) (eff. Oct. 25, 2015). Hearsay evidence is generally inadmissible unless it falls within a recognized exception. *People v. Cloutier*, 178 Ill. 2d 141, 154 (1997). An out-of-court statement

offered into evidence for some purpose other than to prove the truth of the matter asserted is not hearsay. *People v. Kliner*, 185 Ill. 2d 81, 150 (1998).

¶ 40    Defendant argues that this was inadmissible hearsay and improper opinion testimony designed to bolster J.C.'s credibility. However, this testimony was offered not for truth of the matter asserted, but to show why J.C. went to the police station and the child advocacy center; thus, such testimony was not hearsay. Specifically, J.C.'s testimony was in response to the prosecutor's question "Can you go through what happened that day that made you end up going to the police station to make the report?" J.C. explained that her neighbors saw her crying and asked her what was wrong, to which J.C. replied, "I was raped by [defendant]." J.C.'s neighbors told J.C. that what J.C. had told them "wasn't okay," and that J.C. "had to go to the police and report it." Thus, J.C.'s testimony that she was raped by defendant, was part of a narrative showing how the statement moved her from point A to point B. For this reason, J.C.'s testimony that she was raped by defendant was not impermissible hearsay. See *People v. Darr*, 2018 IL App (3d) 150562, ¶ 55. Thus, no error occurred.

¶ 41    Even assuming that the complained of testimony was inadmissible hearsay, defendant has failed to establish that the admission of the statements amounted to plain error. Defendant relies on the first prong of the plain-error doctrine arguing that the alleged improper hearsay warrants reversal because the evidence was closely balanced. We have already determined that the evidence was not closely balanced and thus, defendant has failed to establish plain error due to the alleged errors by the admission of J.C.'s hearsay testimony.

¶ 42    Defendant also argues that the evidence was not closely balanced because there was no corroboration of J.C.'s testimony. Defendant's argument regarding the lack of corroboration is based upon the lack of the police and advocacy group testifying. However, if counsel had objected,

the evidence upon which his defense was based would not have been presented to the jury. We deem counsel's failure to object was trial strategy which precluded a determination that counsel was ineffective or that any error was not invited. Appellate counsel fails to address the issue of whether or not the failure to object was ineffective counsel or trial strategy. As such, appellate counsel has forfeited the claim of plain error regarding the inadmissible evidence that counsel failed to object to.

¶ 43    Defendant cites *People v. Matthews*, 2012 IL App (1st) 102540, and *People v. Smith*, 139 Ill. App. 3d 21 (1985), to support his argument. In *Matthews*, the appellate court reversed defendant's conviction after determining that the evidence was closely balanced. *Matthews*, 2012 IL App (1st) 102540, ¶ 28. Here, the evidence was not closely balanced. Therefore, *Matthews* is distinguishable from this case.

¶ 44    In *Smith*, the defendant was convicted of murder after the State's principal witness, Leon Moore, testified that he saw defendant kill the victim. *Smith*, 139 Ill. App. 3d at 23-24. On appeal, the defendant claimed that the court improperly admitted an out-of-court statement made by Moore in order to bolster Moore's credibility. *Id.* at 31. After Moore testified, the State called Royal Johnson to the stand and, on rebuttal, Johnson testified that Moore told him the defendant shot the victim. *Id.* at 23-24. The *Smith* court concluded that the statement was improperly admitted because Moore was crucial to the State's case as the only eyewitness to the shooting and Moore's credibility was shaken because he was an admitted drug dealer who waited nine months to come forward with his information. *Id.* at 34. Here, the testimony was properly admitted, merely cumulative, and there was other evidence that served to support the jury's verdict. See *People v. Henderson*, 142 Ill. 2d 258, 311 (1990). Defendant fled to Mexico after J.C. spoke to police; when he returned, he admitted his guilt to Guadalupe and asked her for forgiveness. Further, J.C.'s

statements were attested to by her, the party who made the statements, as opposed to a third party as in *Smith*. Thus, *Smith* is inapposite.

¶ 45    Finally, defendant argues that the cumulative impact of the State's errors constitutes plain error that deprived him of a fair trial. However, we have already determined that the issues raised by defendant either did not amount to plain error or that no error occurred at all. Thus, there is no cumulative impact to consider.

¶ 46                                    III. CONCLUSION

¶ 47    The judgment of the circuit court of McHenry County is affirmed.

¶ 48    Affirmed.