THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* BILLY WAYNE YARBROUGH, Defendant-Appellant.

Second District    No. 80-854

Opinion filed February 8, 1982.

Mary Robinson and Paul J. Glaser, both of State Appellate Defender's Office, of Elgin, for appellant.

Daniel D. Doyle, State's Attorney, of Rockford (Phyllis J. Perko and Cynthia Schneider, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE UNVERZAGT delivered the opinion of the court:

Billy Wayne Yarbrough was tried and convicted in Winnebago County of the offense of armed robbery (Ill. Rev. Stat. 1979, ch. 38, par. 18—2). The defendant was sentenced to a minimum term of six years in the Department of Corrections. He filed a timely notice of an appeal.

Defendant allegedly robbed Dale Reinhold, the owner, and Debbie Edwards, an employee, of K. C.'s Disco in South Beloit. The robbery occurred about 2:30 a.m. on December 22, 1979. The two victims were about to get into Reinhold's truck in the parking lot of the disco after having locked up for the night. The defendant approached them, gun drawn, announced it was a stickup and demanded "the receipts." Reinhold advised him the receipts were in the safe inside the disco, and the victims were forced back inside, the safe was opened, and two money bags and a .357 chrome-plated magnum pistol in a holster were removed by the robber. The robber began to leave the disco but was deterred by the sight of car lights through the glass front door of the disco. Reinhold and Edwards lost sight of the defendant in the darkness within the disco, and Reinhold produced a pistol he had been carrying in his belt and fired a shot. Then he and Edwards, believing the robber might still be on the premises, called the police. The police arrived and searched the premises, did not find the robber or the money bags, but did observe the .357 magnum pistol on the floor near the front door. Subsequently, the police received a "tip" that they should show the defendant's photos to the victims. Photos of six other persons who were physically similar to the defendant were assembled and shown to the victims separately. They each chose defendant's photograph.

Defendant was arrested. At the preliminary hearing, Reinhold failed to identify him, but Ms. Edwards did, and the trial court determined that probable cause existed. At the trial of the cause both victims positively identified defendant and he was convicted in a jury trial. A new trial motion was filed and denied, after which the defendant was sentenced to the Department of Corrections. A post-trial motion in the usual form was filed, and thereafter a supplemental post-trial motion was filed by the defendant. The supplemental motion for post-trial relief alleged, *inter alia*, with supporting affidavits, that the defendant's brother, Willie Joe, not the defendant, had committed the robbery at K. C.'s. The trial court

held an evidentiary hearing on the supplemental petition. Willie Joe Yarbrough, defendant's brother, testified that he, Willie Joe, had committed the robbery. Willie Joe's girl friend, Patricia Smith, testified at the evidentiary hearing that Willie Joe showed her a bag of money from which he gave her $250 after she helped count the bag's contents, and she testified that Willie Joe told her it was stolen out of a truck parked at K. C.'s Disco on December 22.

The trial court denied the supplemental motion for new trial, stating that because it did not believe Willie Joe or Patricia Smith that the defendant had not met his burden of proof showing the conclusiveness of his newly discovered evidence, nor had the defendant been diligent in presenting it to the court. Notice of appeal was then timely filed.

In this appeal the defendant makes three major contentions:

I. He was not proven guilty beyond a reasonable doubt.

II. He was denied a fair and impartial consideration of the post-trial motion when the court "suggested" that he be given a lie detector test and later upon its own inquiry was informed that no "beneficial" evidence had resulted from the "investigation."

III. That the court erred in not granting a new trial after the evidentiary hearing conducted pursuant to the supplemental post-trial motion.

It is defendant's first contention that the eyewitness identifications of him were not credible and were unsupported by any objective corroborating evidence that a robbery, in fact, had occurred. The defendant in contrast asserts the alibi evidence he presented was credible and uncontroverted by the State and that therefore reversal was warranted.

■■ Positive identification by one credible witness is sufficient to sustain a conviction. (*People v. Novotny* (1968), 41 Ill. 2d 401), provided the defendant is observed under conditions which would allow a positive identification to be made. (*People v. Reed* (1980), 80 Ill. App. 3d 771.) The robber was described by the witnesses as a black male, about 150-160 pounds, 5'10" to 6' tall, in his early twenties, wearing jeans, boots, a dark jacket and a stocking cap on his head, but not covering his face. Reinhold also said he had a "puffy cheek," although Edwards made no mention of this feature. The parking lot was lighted by mercury vapor lights on the roof of the disco, there was a street light about 50-55 feet away from the door through which the victims and the robber entered the disco, a lighted "Exit" sign above the door, a small light on the cash register, and florescent lights in the anteroom of the small office in which the safe was located and was itself lighted by a bare, 100-watt bulb.

■■ Clearly, the victims had ample opportunity to view the robber, notwithstanding the defendant's contention the victims were more likely to have been focusing on the robber's weapon than his features. Despite the

fact Reinhold's identification of the defendant at trial was somewhat weakened due to his prior inability to identify him at the preliminary hearing, Edwards' identifying testimony was clear, and it alone would have been sufficient to convict if the jury found her credible. This is true even if the defendant presented uncontradicted alibi evidence or more witnesses to support the alibi defense than were called to identify him. (*People v. Menendez* (1980), 84 Ill. App. 3d 1140, 1142; *People v. Setzke* (1961), 22 Ill. 2d 582.) Defendant's alibi evidence presented an issue of fact to be determined by the jury, along with its determination of the credibility of the witnesses. *People v. Johnson* (1980), 94 Ill. App. 3d 200, 207.

■■ The defendant's alibi was that he and a friend, Roger Beckham, left for Atlanta, Georgia, about 4:30 p.m. on December 21 to visit Beckham's grandmother. The defendant claims he could not have committed the robbery since at 2:50 a.m. on December 22 he was "half way to Nashville." Our review of the record causes us to conclude that the jury could easily have rejected the defendant's contention as to his alibi defense due to the numerous inconsistencies in his witnesses' and his own testimony. Although the defendant may indeed have traveled to Georgia on December 22, his arrival time in Atlanta was of critical importance since he could conceivably have committed the robbery immediately before leaving for Georgia and still have arrived in Atlanta later on December 22. According to the testimony Atlanta is a 15- to 15½-hour trip. The jury could also have considered the great potential for fabrication of the alibi defense since defendant, while out on bond, drove to Georgia to pick up the witnesses and transported them to Rockford for the trial itself. In sum, we believe the State sustained its burden of proof beyond a reasonable doubt, and reversal on this point is not warranted.

■■ A motion by the State to strike two authorities cited by the defendant in his brief was ordered to be taken with this appeal. The authorities cited were two articles, one from the Journal of Applied Psychology: Gorenstein and Ellsworth, *Effect of Choosing an Incorrect Photograph on a Later Identification by an Eyewitness*, 65 J. Applied Psychology 616 (1980). The other was Bazelon, *Eyewitness News*, 13 Psychology Today 102 (March 1980). They were cited in support of the defendant's contention that Reinhold's identification of the defendant was not sufficiently credible to sustain a finding of guilty beyond a reasonable doubt because Reinhold was suffering from "weapon focus" coupled with a "commitment factor" arising out of the assertedly unduly suggestive photo lineup. This court in *People v. Dixon* (1980), 87 Ill. App. 3d 814, found expert opinion testimony on the vagaries of eyewitness identification was properly denied at trial since it was a subject within the common knowledge of the jury. But more crucial to the issue in this par-

ticular case is the fact that these writings were not presented to the trial court and were not presented to this court. Since they have never been submitted they cannot be considered and shall not be by this court. The State's motion, therefore, must be granted.

The second thrust of the defendant's appeal is that he was denied a fair and impartial consideration of his post-trial motions when the trial court suggested that a lie detector test be given to Yarbrough and later, upon the court's inquiry, was informed that no "beneficial" evidence had resulted from that investigation.

Section 8b of the act relating to lie detector tests provides:

"In the course of any criminal trial the court shall not require, request or suggest that the defendant submit to a polygraphic detection deception test, commonly known as a lie detector test[,] to questioning under the effect of thiopental sodium or to any other test or questioning by means of any mechanical device or chemical substance." Ill. Rev. Stat. 1979, ch. 38, par. 155—11.

■■ The People contend that this issue is waived for failure to object. Considering the unambiguous restriction placed on the trial court by this statute, we find no merit in the State's waiver argument, however. We believe the trial court's action in this regard amounts to plain error. It is clear the trial court here did not observe the restriction in section 8b, to-wit:

"I am going to say this to the prosecution, again without any reflection on the facts of this case, and whatever they do is certainly up to them, and I'm not—I don't want to know whether you do anything or not; but in some cases of this type where there is only identification by eyewitnesses and there is no other corroborating evidence and there appears to be an alibi, that from time to time the state's attorney's office has given lie detector tests to a defendant to insure that they do have the right man. While that isn't the sole test, by any means, nor is it one that is admissible in evidence, there are times when that can be used, along with all the other available facts that the State has, to determine whether, in fact, an innocent man may have been convicted. I want to make it clear that I am not saying an innocent man is convicted. I am just saying that under the evidence there is no corroboration. I would suggest that. I don't want to know the answer whether you do it or you don't do it, because it is only a matter that the State, if it conducts a lie detector test, felt that was conclusive, the State would come in and move to vacate. The Court does not want to know the results or even whether you conducted one, because I cannot take that into consideration, but I suggest it. I know it has been done in the past in the state's attorney's office."

Then, immediately after the post-trial motion arguments were heard, and before the court commented or decided the merits of the post-trial motion, the trial judge asked:

"THE COURT: * * * I take it, Mr. Fuenty [assistant State's Attorney] that there is no new evidence subsequent to the trial that would, in the interest of justice, be beneficial to the Defendant?

MR. FUENTY: Certain investigative procedures were performed subsequent to the trial. As a result of these investigative procedures which Mr. Beu participated in, there is no new evidence available to the Defendant. In fact, all of the results of that investigative procedure are in the hands of Mr. Beu."

Polygraph evidence is not admissible in the State of Illinois; any stipulation to the contrary constitutes an attempt to change the legal standards for admissibility, which is an unacceptable result. (*People v. Baynes* (1981), 88 Ill. 2d 225.) *Baynes* found the admission without objection of polygraph evidence in that case rose to the level of plain error which impinged upon the integrity of the judicial system. (88 Ill. 2d 225, 230-31.) The defendant's assertion in his brief that the trial court improperly assumed the role of a prosecutor by suggesting a polygraph test is not without some support. It has been stated that discretion in the administration of polygraph exams is an adjunct to the discretionary powers of the State in prosecuting criminal conduct. *People v. Smeathers* (1975), 26 Ill. App. 3d 1027.

■■■ Contrary to the State's assertion otherwise, we believe the second-quoted passage from the record strongly indicates the court was seeking information as to the results of the "certain investigative procedures." Further, it made no comment about the decision on the merits of the post-trial motion until it had determined there was no "new evidence subsequent to the trial that would, in the interest of justice, be beneficial to the Defendant." It would appear that the trial court withheld exercise of its discretion until it was possessed of that last little bit of information which, under the sequence of events, must have been considered by it to be conclusive. Similar to the posture of the court in *People v. Nimmer* (1962), 25 Ill. 2d 319, 321, we believe it could be said that just before it ascertained the results of the test "the court did not then entertain an unalterable or conclusive conviction of guilt." The *Nimmer* court granted the defendant a new trial due to that court's improper suggestion as to the use of, and reliance on, a polygraph exam. There, however, the court was also the trier of fact and its intent to rely on the exam was manifestly evident. Here, by contrast, it would appear the trial court could have been swayed by the favorable results of a lie detector test, but it was not absolutely certain. Further, the jury, not the court, was the fact finder. In that respect, the trial court's only task was to determine whether, as a

matter of law, the verdict could not stand; the defendant's motion was the equivalent of a motion to direct a verdict of acquittal. (*People v. Waller-stedt* (1979), 77 Ill. App. 3d 677.) Accordingly, the trial court was required to view the evidence and the inferences in the light most favorable to the State. (*People v. Tibbs* (1978), 57 Ill. App. 3d 1007.) In determining whether the trial court abused its discretion in deciding a motion for a new trial, the reviewing court will consider whether the jury's verdict was supported by the evidence and whether the losing party was denied a fair trial. (*Reidelberger v. Highland Body Shop, Inc.* (1981), 83 Ill. 2d 545, 549.) We believe the jury's verdict was supported by the evidence and that the defendant received a fair trial. Accordingly, we believe the trial court's suggestion concerning lie detector tests, while error, was harmless beyond a reasonable doubt.

The third argument advanced by the defendant on appeal is that the circuit court erred in denying his motion for a new trial after hearing seven witnesses including and in particular that of his brother, Willie Joe, who testified that about 2:30 going on 3 a.m. on December 22, 1979, he was in South Beloit, he was armed with a weapon, he noticed a man and a lady walking out of K. C.'s Disco, and he asked them to stop and asked them for money. He testified he pulled out the handgun and pointed it at them and asked them for money. Willie Joe Yarbrough testified that the man said that the money was inside, and the man unlocked the door and they all went in. The man opened the safe, and Willie Joe removed two money bags and a hand gun from the safe and then he told them not to come out of the room until he left, after which he left the building.

We find no ground for reversal in the argument. The circuit court did not abuse its discretion in denying the motion.

A succinct and often-cited summary of criteria to be considered in reviewing the circuit court's denial of a motion for a new trial is found in *People v. Baker* (1959), 16 Ill. 2d 364; the court there said:

"A motion for a new trial on the ground of newly discovered evidence is addressed to the discretion of the trial judge and denial thereof will not be disturbed upon review in the absence of a showing of an abuse of discretion. [Citation.] To warrant a new trial, the new evidence must be of such conclusive character that it will probably change the result on retrial, that it must be material to the issue but not merely cumulative, and that it must have been discovered since the trial and be of such character that it could not have been discovered prior to trial by the exercise of due diligence. [Citations.]" 16 Ill. 2d 364, 373-74.

In an earlier case, the court also held:

"Applications for a new trial on the ground of newly discovered evidence are not looked upon with favor by the courts, and in

order to prevent, so far as possible, fraud and imposition which defeated parties may be tempted to practice, as a last resort, to escape the consequence of an adverse verdict, such application should always be subjected to the closest scrutiny by the court, and the burden is upon the applicant to rebut the presumption that the verdict is correct and to show there has been no lack of diligence. The matter is largely discretionary with the trial court, and the exercise of its discretion will not be disturbed except in case of manifest abuse." *People v. Holtzman* (1953), 1 Ill. 2d 562, 569.

Judged by these standards, there was no abuse of discretion.

■■■ Although the evidence of Willie Joe Yarbrough's confession would have been conclusive as to the defendant's guilt or innocence had it been believed by the jury, that evidence must also "be of such conclusive character that it will probably change the result on retrial." (*People v. Baker* (1959), 16 Ill. 2d 364, 374.) The court here heard the new evidence, which, as the State details in its brief, was fraught with inconsistencies from the testimony of the victims at trial. The trial court also had to consider the fact that neither of the victims recognized Willie Joe. This fact must be contrasted with their earlier positive identification of the defendant as the robber at trial. Although Reinhold's identification of the defendant may have been somewhat impeached, it must be taken into consideration that Debbie Edwards identified the defendant as the robber on three separate occasions: at the photographic lineup, the preliminary hearing and at trial. Under these circumstances the probability of a different result being reached in a retrial is rather remote. We cannot, therefore, conclude the trial court abused its discretion in denying the defendant's motion for a new trial.

The judgment of the circuit court of Winnebago County is therefore affirmed.

HOPF and NASH, JJ., concur.