(56334.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. BILLY WAYNE YARBROUGH, Appellant.

*Opinion filed December 17, 1982.—Rehearing denied January 28, 1983.*

RYAN, C.J., dissenting.

G. Joseph Weller, Deputy Defender, and Paul J. Glaser, Assistant Defender, of the Office of the State Appellate Defender, of Elgin, for appellant.

Tyrone C. Fahner, Attorney General, of Springfield,

and Daniel D. Doyle, State's Attorney, of Rockford (Phyllis J. Perko and Cynthia N. Schneider, of the State's Attorneys Appellate Service Commission, of Elgin, of counsel), for the People.

JUSTICE SIMON delivered the opinion of the court:

The defendant, Billy Wayne Yarbrough, was sentenced to a six-year prison term after a jury in the Winnebago County circuit court found him guilty of armed robbery. The principal issue raised by this appeal is whether the defendant should receive a new trial because immediately after the jury verdict was received the trial judge suggested that the State give the defendant a polygraph exam and then withheld decision on defendant's post-trial motions until after inquiring into the results of the exam. The defendant's post-trial motions set forth several grounds, including insufficiency of the evidence. The defendant relies heavily on our recent decision in *People v. Baynes* (1981), 88 Ill. 2d 225, in which we held that polygraph evidence adverse to the defendant was not admissible in a criminal trial even when the parties, prior to the polygraph test, had stipulated that the results would be admissible. The decision in *Baynes* turned upon what this court regarded as the inherent deficiencies of the polygraph instrument. The defendant also relies on section 8b of the act relating to lie-detector tests (Ill. Rev. Stat. 1979, ch. 38, par. 155—11), which provides that in the course of a criminal trial the court shall not suggest that the defendant submit to a polygraph test.

The only substantive evidence offered against the defendant was the testimony of the two victims of the robbery. One of them was the owner of a disco in South Beloit and the other was his employee. In brief, they testified that they were accosted by an armed robber in the parking lot of the disco at 2:30 a.m. after they had closed it and were leaving the premises. The robber

forced them back inside the disco, where the owner opened the safe. The robber removed two money bags and fled. The owner and the employee both described the robber to the police.

Six days later the police showed photographs of seven men, including the defendant, to the disco owner and the employee, and they each picked out the defendant. At the preliminary hearing the disco owner failed to identify the defendant, but the employee did point him out. At the trial, both the owner and the employee identified him.

The defense was an alibi. One witness testified that he and the defendant left South Beloit by automobile for Atlanta, Georgia, the afternoon before the robbery, arrived there approximately five hours after the robbery and stayed in Georgia for the next four days. The defendant testified to the same effect. The defendant and his friend both claimed they were on Interstate 65 headed south when the robbery took place. Relatives of the witness who said he traveled to Georgia with the defendant came from Georgia to appear at the trial. They testified that the defendant and his friend were in Atlanta a few hours after the robbery and in Georgia during the next four days.

The trial judge suggested a polygraph examination immediately after the jury was polled. He said:

"I am going to say this to the prosecution, again without any reflection on the facts of this case, and whatever they do is certainly up to them, and I am not—I don't want to know whether you do anything or not; but in some cases of this type where there is only identification by eyewitnesses and there is no other corroborating evidence and there appears to be an alibi, that from time to time the state's attorney's office has given lie detector tests to a Defendant to ensure that they do have the right man. While that isn't a sole test, by any means, nor is it one that is admissible in evidence, there are times when that can be used, along with all the other available

facts that the State has, to determine whether, in fact, an innocent man may have been convicted. I want to make it clear that I am not stating an innocent man is convicted. I'm just saying under the evidence there is no corroboration. I would suggest that. I don't want to know the answer whether you do it or you don't do it, because it is only a matter that the State, if it conducts a lie detector test, felt that it was conclusive, the State would come in and move to vacate. The Court does not want to know the results or even whether you conducted one, because I cannot take that into consideration, but I suggest it. I know it has been done in the past in the state's attorney's office."

During argument on the defendant's timely filed motion for a new trial, which the trial court denied, the following colloquy took place:

"THE COURT: Thank you, Mr. Beu [defense counsel]. I take it, Mr. Fuenty [assistant State's Attorney], that there is no new evidence subsequent to the trial that would, in the interest of justice, be beneficial to the Defendant?

MR. FUENTY: Certain investigative procedures were performed subsequent to the trial. As a result of these investigative procedures which Mr. Beu participated in, there is no new evidence available to the Defendant. In fact, all the results of that investigative procedure are in the hands of Mr. Beu."

The trial judge again addressed himself to the subject of a polygraph exam when he denied the defendant's request for an appeal bond. On that occasion, he said:

"The Court considered in the motion for new trial the evidence in the case. The jury heard the facts, and I indicated to both lawyers at the conclusion of the trial and after the jury came in that in any of these type [sic] of armed robbery cases where there are eyewitnesses, sometimes it is in the interest of justice as to the benefit of the State as well as the Defendant that they take other means to explore whether there has been a just conviction. I don't know the results of any other investigation other than, apparently, as stated in open court, there was

some investigation and that was made available to the defense."

The appellate court affirmed the conviction (103 Ill. App. 3d 967), and we allowed the defendant's petition for leave to appeal.

The People concede, as the appellate court concluded, that the trial judge's suggestion regarding a polygraph test was error, but urge that the error was harmless. Had the trial judge in this case, without suggesting such a test, denied the motion for a new trial, no one could find fault with his call. But that does not make the error harmless. A defendant is entitled not only to a fair trial, but to an objective and unbiased appraisal of the points he raises in his post-trial motion as well. The problem in this case is that we have no way of knowing the extent to which the trial judge's judgment was affected by his knowledge of the polygraph results or what his decision would have been had he not suggested a polygraph test. The judge must have had some misgivings about the sufficiency of the evidence. Otherwise, he would not have brought up the subject of the polygraph. *People v. Nimmer* (1962), 25 Ill. 2d 319, 321.

The guidance provided by *People v. Baynes* is controlling in this case. There the defendant was given a new trial not because the evidence was close but rather because we regarded the use of polygraph evidence as rising to the level of plain error. We explained the new trial we granted by saying that the error in admitting polygraph evidence, even pursuant to a stipulation of the parties, "infringes upon the integrity of our judicial system." Our renunciation of polygraph evidence in order "to protect and preserve the integrity and reputation of the judicial process" is as relevant to its use in connection with disposition of post-trial motions as to its use during the actual trial. Our emphatic and unequivocal conclusion in *Baynes* that polygraph evidence is not reliable enough to be given consideration in any manner applies to its use by any participant in

the trial process, whether it be by the trial judge in passing upon post-trial motions or by the finder of fact, be it judge or jury. It would be anomalous for this court to hold that while the trier of fact is not permitted to hear polygraph evidence even when the defendant stipulates to its admission, as we did hold in *Baynes,* the trial judge is still free to refer to that type of evidence in deciding whether the evidence is sufficient.

We are confronted in this case not only by the possibility, as in *Baynes,* that polygraph results were relied upon, but also by a disregard of the statute which directs trial judges not to suggest that the defendant submit to such a test. The People note that this statute does not mandate automatic reversal and that in fact it specifies no remedy for a violation of its terms. Therefore, the People suggest, we should turn to our plain error rule, Rule 615 (73 Ill. 2d R. 615(b)), to determine what remedy is appropriate. That is the precise rule we applied in *Baynes* in deciding that resort to polygraph evidence is not permissible. We think it is as much plain error when presented to a trial judge as it is when presented to a jury. Thus, in reliance upon the strong reservations about the use of polygraph evidence we announced in *Baynes,* we believe the defendant was entitled to have his post-trial motion passed upon without reference to whether he had or had not taken the polygraph test or whether he had passed or failed it. The suggestion by the trial judge in *Nimmer* that the defendant submit to a lie-detector test was enough to cause this court to order a new trial on the ground it violated the clear direction of the statute. In that case the judge made the suggestion after a bench trial and after announcing that under the evidence he would have to find the defendant guilty. Here, by his polygraph suggestion, the trial judge transgressed into areas which both *Baynes* and the statute forbid him to explore.

The People seek to avoid the impact of *Baynes* in two

ways. First they intimate that after initially suggesting the polygraph test, the trial judge never thereafter inquired whether the test had been given and that he was kept in the dark as to the results of the test, if there was one. We find this suggestion unpersuasive because, once having suggested a polygraph exam as the People concede the trial judge did, it would be unrealistic to assume that he had no further interest in learning whether one had been given. We read the prosecutor's response quoted above to the court's inquiry during the hearing on the motion for a new trial referring to "certain investigative procedures" as having been "performed subsequent to the trial" and his further statement that "the results *** are in the hands of" the defense counsel to refer to a polygraph exam. The judge knew that if the results of the exam favored the defendant, his counsel would so inform the court. Although the trial judge, in suggesting the polygraph examination, said he did not want to know the results or even if a test had been conducted, we believe the record shows that, upon the judge's invitation, the prosecutor conveyed to him the message that the exam had been taken and that the results were not beneficial to the defendant.

Second, the prosecution argues that the part of the post-trial motion attacking the sufficiency of the evidence was equivalent to a motion to direct a verdict of acquittal and that in resolving such a motion the trial judge is precluded from reweighing the evidence or reassessing the credibility of witnesses. On the contrary, the People contend, that type of motion requires the trial judge to view the evidence and inferences in the light most favorable to the prosecution. Thus, the People reason that applying these standards it was clear without regard to the polygraph results that the identification by the two robbery victims was sufficient to establish the defendant's guilt and reference to the polygraph results was harmless error.

Regardless of the standards a trial judge should follow

in reviewing the sufficiency of the evidence, it is clear that the judge is confined to the record before him and his impression of the witnesses. Due process does not permit him to go outside the record, except for matters of which a court may take judicial notice, or conduct a private investigation in a search for aids to help him make up his mind about the sufficiency of the evidence. (*People v. Harris* (1974), 57 Ill. 2d 228, 231; *People v. Wallenberg* (1962), 24 Ill. 2d 350, 354; *People v. Cooper* (1947), 398 Ill. 468, 471-72; *People v. McGeoghegan* (1927), 325 Ill.337, 355; Rizzi, *The Period After Closing Arguments—An Important But Overlooked Part Of A Trial*, 69 Ill. B.J. 548, 559 (1981).) In *Cooper,* after a bench trial which resulted in the defendant being found guilty of murder and while her motion for a new trial was pending, the trial judge visited the premises where the homicide occurred. He then denied the new trial motion. In reversing the conviction, this court said:

> "The point is that neither the defendant, pursuing her motion for a new trial, nor this court on review can ascertain or determine the basis for the trial court's denial of the motion for a new trial. Exclusive of certain matters of which the court may take judicial notice, the deliberations of the trial judge are limited to the record made before him in open court. In short, any private investigation by a court pending a motion for a new trial constitutes a denial to the defendant of the constitutional guarantee of due process of law." *People v. Cooper* (1947), 398 Ill. 468, 472.

The rule prohibiting a judge from referring to matters outside the record in disposing of a motion for a new trial obviously precludes reference to the results of a polygraph test which was not offered at trial and which would have been inadmissible if offered. The trial judge has failed to discharge his obligation to appraise the sufficiency of the evidence without going outside the record for assistance. As noted above, he apparently had concerns about the sufficiency of the evidence; otherwise he would not have sug-

gested the polygraph and then referred to it twice thereafter. In view of those concerns, we should not attempt to review the evidence and substitute our judgment for judgment of a type he should have made but did not. We should especially refrain from applying our judgment to the motion for a new trial because it was the trial judge who saw and heard the witnesses. The trial judge has the inherent power to grant a new trial (*People v. Preston* (1931), 345 Ill. 11, 16), and in determining whether to exercise that power he must confine himself to the record. The defendant was entitled to a decision of the trial judge on his motion for a new trial arrived at in a proper manner. The reference to the polygraph was not harmless.

For these reasons we reverse the judgment and remand this cause for a new trial. In view of this decision, it is unnecessary to consider the other matters raised by the defendant in this appeal, including that a post-trial assertion by the defendant's brother that he and not the defendant committed the robbery mandated a new trial.

*Reversed and remanded.*

CHIEF JUSTICE RYAN, dissenting:

I agree with my colleagues that the trial court erred in its apparent use of polygraph-test results in passing on the defendant's motion for a new trial. I do not think, however, that the defendant's conviction should be set aside and a new trial granted. The use of the polygraph information in no way tainted the verdict of the jury.

In the interest of judicial economy, I would, in this case, consider the merits of the defendant's contention raised in his motion for a new trial and determine whether the trial court's denial constituted an abuse of discretion. This, in essence, was the procedure followed by the appellate court in this case. (103 Ill. App. 3d 967.) As stated by the appellate court, the jury in this case was the trier of the facts and the trial court's only function in passing on the defendant's motion was to determine, as a matter of law,

whether the verdict could stand. In doing this, the court was required to view the evidence and inferences in the light most favorable to the State. In considering the merits of the defendant's motion, I find that the evidence and inferences considered in this light support the verdict of guilty. The trial court's denial of the motion for a new trial was therefore not an abuse of discretion and the error committed by the trial court must be considered as harmless error.

The majority opinion relies on *People v. Nimmer* (1962), 25 Ill. 2d 319, and *People v. Cooper* (1947), 398 Ill. 468. Neither case is in point. Both cases were bench trials where the conduct of the judge tainted the actual finding of guilt. In neither case was the error involved committed in passing on a motion for a new trial.

Since the verdict of the jury in our case was not tainted by the error of the judge, I can see no reason for granting a new trial. The complete record is before us. We can determine whether the judge's action in denying the defendant a new trial was an abuse of discretion. By applying the same standards that we apply in all criminal cases, we can finalize this litigation here and now. The opinion of my colleagues needlessly launches this case on another journey through the trial court, the appellate court, and again, ultimately, to this court. This additional caseload should not be imposed upon the judicial system of this State when we are, at this time, in a position to determine the merits of the defendant's contentions. I, therefore, dissent.