NOTICE

Decision filed 03/24/23. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2023 IL App (5th) 200181-U

NO. 5-20-0181

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Fayette County. |
| | ) | |
| v. | ) | No. 17-CF-29 |
| | ) | |
| ROGER L. SEATON, | ) | Honorable |
| | ) | M. Don Sheafor, |
| Defendant-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE BOIE delivered the judgment of the court.
Justices Welch and Moore concurred in the judgment.

**ORDER**

¶ 1   *Held*:   We affirm the judgment of the trial court where the defendant's statements during an overhear conversation were properly admitted at trial, and where the trial court's comments during the hearing on the defendant's fourth posttrial motion were harmless error.

¶ 2   On February 27, 2019, the defendant, Roger L. Seaton, was found guilty of three counts of predatory criminal sexual assault in violation of section 11-1.40(a)(1) of the Criminal Code of 1961 (Code) (720 ILCS 5/11-1.40(a)(1) (West 2010)). On June 9, 2020, the defendant was sentenced to 21 years' imprisonment in the Illinois Department of Corrections (IDOC).

¶ 3   The defendant now appeals the judgment of the trial court arguing that the trial court erred in admitting the defendant's statements, made during an overhear telephone conversation with the victim, as tacit admissions. The defendant also argues that the trial court improperly relied upon

1

personal knowledge in denying the defendant's fourth posttrial motion to reconsider the sentence. For the following reasons, we affirm the judgment of the trial court.

¶ 4                                    I. BACKGROUND

¶ 5     The defendant is the natural father of C.S. The defendant was married twice to C.S.'s mother, Rebecca S., and both marriages ended in divorce. The defendant and Rebecca had reconciled and were "seeing each other," in October 2016, when C.S. informed Rebecca that C.S. had been sexually assaulted by the defendant. According to C.S.'s allegations, the sexual assaults had occurred between November 1, 2008, and February 1, 2009, during court-ordered visitations with the defendant, while the defendant and Rebecca had been estranged. Rebecca contacted the defendant about the allegations, and then reported C.S.'s allegations to the Illinois Department of Children and Family Services (DCFS). DCFS contacted the Illinois State Police (ISP), and the ISP conducted a criminal investigation while the DCFS conducted a child abuse and neglect investigation.

¶ 6     During the ISP's investigation, the trial court granted the ISP a 30-day warrant for an overhear of a telephone conversation between C.S. and the defendant. The overhear conversation took place on November 9, 2016. Jeffrey Kline, a special agent with the ISP in 2016, was present with C.S. and another agent, Andrew Smith, during the overhear conversation. The overhear conversation began with C.S. placing a cellular telephone call to the defendant, stating to the defendant that she was alone, and then asking the defendant questions regarding the alleged sexual abuse while the conversation was being overheard and recorded by the ISP.

¶ 7     An emergency order of protection had been issued by the trial court prohibiting the defendant from contacting C.S., but that order had expired and had not been renewed at the time of the overhear conversation. During the overhear conversation, C.S. informed the defendant that

2

the order of protection had not been renewed. The defendant, however, testified at trial that it was his understanding that an order of protection was still in place at the time of the overhear conversation. The defendant also testified at trial that he was aware of the allegations prior to being charged, and prior to the overhear conversation, since "[i]t was all over Facebook."

¶ 8 On February 7, 2017, the defendant was charged by information with three counts of predatory criminal sexual assault in violation of section 11-1.40(a)(1) of the Code (720 ILCS 5/11-1.40(a)(1) (West 2010)). Each count alleged that during the period of November 1, 2008, through February 1, 2009, the defendant committed an act of sexual penetration with his daughter, C.S., who was under 13 years of age at the time of the offenses.

¶ 9 On July 12, 2018, the defendant waived his right to a jury trial, and a bench trial was conducted on February 27, 2019. The trial court stated, at the beginning of the trial, that "[b]efore the trial began we were in my office and we talked a little bit about the hearsay exception for minors in sexual abuse cases." The trial court stated that defense counsel had made an argument that the State was attempting to get in statements contrary to statute. The trial court then requested that defense counsel give a brief overview of the statute that the defense was referencing. Defense counsel did not state a specific rule, or provide a citation to a statute, but stated that it related to "the statement by the alleged victim prior to the age of 13 or within three months of the date of the commission of the offense, they're admissible even if it were 13 and three months."[1] The defense

---

[1]We note that the defendant's amended posttrial motion, filed on June 8, 2020, alleged that the trial court erred in allowing exceptions to the rule against hearsay, in that the alleged victim was 16 years old at the time she first reported the allegations. The defendant's amended posttrial motion cited to section 115-10 of the Code of Criminal Procedure of 1963 (725 ILCS 5/115-10 (West 2018)). Section 115-10 provides certain hearsay exceptions in a case involving, *inter alia*, sexual relations within families and that in a "case involving an offense perpetrated against a child under the age of 13, the out of court statement was made before the victim attained 13 years of age or within 3 months after the commission of the offense, whichever occurs later, but the statement may be admitted regardless of the age of the victim at the time of the proceeding." *Id*. § 115-10(a), (b)(3).

further stated that, since the alleged victim was now 20 years old, any statements that she may have made as recently as 2016 were inadmissible.

¶ 10    The State responded that the victim in this matter had made no disclosures pertaining to the alleged abuse until she was 16 years of age, so it was the State's position that the statute was inapplicable in this case. The trial court confirmed that defense counsel was seeking "those hearsay statements to be excluded from evidence due to the fact that there is no other normal hearsay rules that would apply." The trial court held that the ordinary rules of evidence and hearsay would apply to anyone over the age of 13 years, 4 months, at the time of the disclosure.

¶ 11    Later in the trial proceedings, during the testimony of Jeffrey Kline, the State moved to play the audio recording of the overhear conversation. The following dialog then occurred:

"THE COURT: All right. I don't know of any—are you making any objection at this time or do you have any questions?

[DEFENSE COUNSEL]: I've listened to the overhear and I think this will probably violate the Court's order on motion *in limine*[2] because of statements by [C.S.] herself that are subject to the same constraints we talked about.

THE COURT: Who did the interview take place between? Who was on the phone?

THE WITNESS: Your Honor, the phone call was made between [C.S.] and her father, [the defendant].

THE COURT: That will be admissible. That is direct statements made by the defendant, it's not hearsay. Go ahead.

_____

[2]We note that there is no written motion *in limine* contained in the record on appeal and that the only motion made by the defense, prior to the commencement of the trial, was the oral motion regarding hearsay summarized above.

4

[DEFENSE COUNSEL]: But with [C.S.'s] statements, if she makes factual allegations, then that would be.

THE COURT: That's completely different involving the defendant. It's not hearsay if it's direct talks with the defendant. And he has a right to dispute them if he wants or say it didn't occur, but no, that does not apply to the defendant himself. Any conversation whatsoever between her and the defendant are admissible at any time.

[DEFENSE COUNSEL]: Yes, Your Honor. Thank you.

THE COURT: Thank you. That objection will be overruled."

¶ 12    The audio recording of the overhear conversation was then played while Jeffrey Kline testified to the contents[3] of the overhear conversation. At the conclusion of Kline's testimony, the State moved to admit the audio recording of the overhear conversation, marked as People's Exhibit 1, into evidence as follows:

"[THE STATE]: The State will be seeking to admit People's Exhibit 1 into evidence.

THE COURT: [Defense counsel], any objections other than what you stated previously?

[DEFENSE COUNSEL]: No, Your Honor.

THE COURT: All right. The Court is going to admit People's Exhibit No. 1 into evidence.

[THE STATE]: I'm giving it to the clerk.

THE COURT: Over defendant's prior objections about the hearsay."

---

[3]In the interest of brevity, portions of the overhear conversation, if relevant to a specific argument raised by the defendant, will be set forth in our analysis below.

¶ 13 The defendant testified on his own behalf at trial. During direct examination, the defendant testified, in part, as follows:

"[DEFENSE COUNSEL]: And [C.S.] asked you. 'So then why did you put your penis in my mouth?' And you said, 'I didn't mean to do that either.' And then down below, 'I do remember putting that Bag Balm[4] on you and giving you and [T.S.][5] a bath. But I didn't remember licking you.' And then it was inaudible. 'Or even putting my penis in your mouth.' Is that a correct statement of what you said?

[DEFENDANT]: I don't—I mean, yeah. I heard it on that audio. Yes.

[DEFENSE COUNSEL]: Okay. And that was your voice that was on that audio recording, correct?

[DEFENDANT]: Yes."

¶ 14 The following dialog occurred during the State's cross-examination of the defendant:

"Q. 'I asked you if you wanted to, and you said you didn't care.' Did you say that?

A. If it's in there, I did.

Q. Well, you heard it.

A. Yeah. Then I also denied it.

Q. Did you hear yourself say it?

A. I heard myself say it. But I don't remember. I mean, I remember saying it there. But I didn't remember saying it before. I don't remember none of that happening neither.

Q. You said, 'I don't remember' a few times too; did you hear that?

---

[4]The defendant testified that in May or June 2007, when C.S. was eight years old, she had a rash on her vagina and that he had applied "Bag Balm" medication on the rash.
[5]"T.S." is the defendant's son and C.S.'s brother.

A. I heard that a lot. Yes.

Q. I heard that a lot after you just admitted it.

[DEFENSE COUNSEL]: Objection, Your Honor. I don't think there's any admission that's been testified to or pointed out by counsel.

[THE STATE]: Judge, I disagree. That is a tacit admission.

THE COURT: Yeah. There's a difference between a right out admission and a tacit admission. I think arguably they're tacit admissions. State, just asking about the statement rather than whether or not—skip the point of whether or not it's an admission or not. Just ask him if he made the statement."

¶ 15    The following dialog also occurred later in the State's cross-examination of the defendant:

"Q. Despite your admissions in the overhear, you're saying you had no sexual contact with her?

A. Just the Bag Balm is all I remember.

Q. Even though you made tacit admissions?

A. No.

Q. You know what a tacit admission is?

A. I have no idea.

Q. It's not a direct admission, as the Judge pointed out earlier. It is by facts and circumstances an admission to the facts around it. And by saying what you said, that makes it—or implies that you are admitting to it. Does that make sense?

A. Yeah.

Q. Okay. Would you agree that there are tacit admission in there?

A. I believe that. But I also don't remember the other two things at all."

7

The defense made no objection to the State's cross-examination of the defendant regarding tacit admissions.

¶ 16 The trial court, in announcing its finding at the conclusion of the trial, stated, *inter alia*, as follows:

> "THE COURT: *** When [C.S.] initially at the beginning [of the overhear conversation] said, 'So why did we do these sexual things together?' [The defendant's] response is, 'Yeah. What about it? It was a big mistake. We're just gonna have to talk about it sometime not on the phone.'
>
> To me, as the State has said, that is a tacit admission. Instead of saying what in the blank are you taking about? Or you're crazy. If somebody accuses you of that and then you say, well, I made a big mistake and not screaming to the world that you didn't do this.
>
> When your first response was I made a mistake. We're gonna have to talk about this sometime if we can't do it on the phone. Like you want to keep it secret from other people hearing at that time. And I am going to find that is a tacit admission."

The trial court then cited to several other statements that the defendant had made during the overhear conversation and stated that there was no doubt that they were tacit admissions. The trial court stated that "the first part of [the overhear conversation,] I think [the defendant] was making tacit admissions all throughout here."

¶ 17 The trial court went on to discuss the testimony of the witnesses, and then stated that it found that the State had proven all three charges beyond a reasonable doubt. As such, the trial court found the defendant guilty of all three counts of predatory criminal sexual assault and set the matter for a sentencing hearing.

¶ 18    The defendant filed a motion for new trial on July 2, 2019,[6] a motion for reconsideration of revocation of bond on August 9, 2019, and a second motion to reconsider on December 2, 2019. The defendant filed another posttrial motion for new trial on February 24, 2020, and filed a third motion to reconsider and an amended posttrial motion June 8, 2020. The trial court addressed the defendant's posttrial motions on August 13, 2019, January 14, 2020, and during the sentencing hearing on June 9, 2020. The defendant's posttrial motions generally alleged, *inter alia*, that the trial court erred in denying the defendant's objections to the testimony and evidence by the State, but none of the defendant's posttrial motions raised the issue of tacit admissions. Each of the defendant's posttrial motions were denied by the trial court.

¶ 19    On June 9, 2020, the trial court conducted a sentencing hearing. At the conclusion of the sentencing hearing, the trial court sentenced the defendant to 7 years' incarceration in the IDOC on each count, for a total of 21 years' incarceration, to be followed by mandatory supervised release of 4 years to life, and a $2000 fine.

---

[6]We note that the defendant was found guilty on February 27, 2019, and his first posttrial motion was filed on July 2, 2019; over 120 days from the date of the verdict. The defendant's first motion for new trial contained two counts that alleged the discovery of new evidence and requested that the trial court set aside the findings of guilty and grant the defendant a new trial. The first count was pursuant to section 116-1 of the Code of Criminal Procedure of 1963 (725 ILCS 5/116-1 (West 2018)), and the second count was pursuant to section 2-1401(a) of Code of Civil Procedure (735 ILCS 5/2-1401(a) (West 2018)). Section 116-1 of the Code of Criminal Procedure of 1963 requires a posttrial motion to be made within 30 days following the entry of a finding or the return of a verdict. Section 2-1401(a) of the Code of Civil Procedure permits a motion for relief from final orders or judgment after 30 days from the entry thereof. The final judgment in a criminal case, however, is the sentence. *People v. Abdullah*, 2019 IL 123492, ¶ 19. As such, any motion pursuant to section 2-1401 was inapplicable since the defendant had not yet been sentenced. The State made no objection to the timeliness of the defendant's motion under section 116-1, nor did the State object to the timeliness of any of the defendant's posttrial motions filed prior to sentencing. There is no jurisdictional bar to a trial court entertaining a posttrial motion not timely filed within 30 days as prescribed in section 116-1, but prior to the imposition of sentence. *People v. Harper*, 347 Ill. App. 3d 499, 502 (2004). As such, there was no bar to the trial court's consideration of the defendant's untimely posttrial motion for new trial.

¶ 20    On June 11, 2020, the defendant filed a fourth motion to reconsider alleging that the defendant's sentence was excessive in light of the defendant's background, criminal history, and the facts of the case. The trial court conducted a hearing on the defendant's fourth motion to reconsider on June 18, 2020. After arguments by the parties, the trial court stated as follows:

"THE COURT: Thank you, State. [The defendant], here is what I'm going to say. I'm going to say that under the facts of this case you qualified for a huge potential prison sentence, and I chose not to do that in your case for, first of all, the reason that you don't have any prior history. But most sex offenders don't, so I really don't know how—and you know, one of the things I did consider was your age. I mean, you are 60. And I also took into account that you had, I think, one kidney and you did have some little health problems, and for that reason I gave you, in my opinion, a very light sentence in this case."

¶ 21    The trial court went on to state:

"You know what? I don't know, I think about my cases a lot of times when I'm at home, and I remember at the sentencing hearing, [the defendant], that you said you used to have a drinking problem. I remember you said that. Then you kept saying—I mean, to me it's almost coming all together in my mind now about what truly may have happened, because you kept saying that you don't remember it, you don't remember it, and then—instead of saying, I didn't do it. And then you say, I used to have a drinking problem, which would be about the time, maybe, this occurred, and I'm beginning to wonder if you apparently did this at times when you were excessively drinking alcohol and there's parts of it that you might not remember.

In fact, I've had a neuropsychologist—I'm sorry, I think it was neurological psychiatrist—and his name was Dr. Michael Gelbort—different case—and I called Dr.

10

Gelbort as a witness in that case because I was representing a man in a murder case and my client was—anyway, the doctor testified how the alcohol affects memory, and he explained it so well to the jury ***. ***

I'm just thinking about all of this together. And you kept saying this, you know, that you used to have a drinking problem. I think it's very possible that this could have happened when you just can't remember everything that happened. According to this Dr. Gelbort, you would remember something but not all of it, and to me that seems to really fit. But I am going to deny your motion, I am not going to reduce it down by three years. I think this is an appropriate sentence, and by any means I do not see this to be an excessive sentence for the charges and the reason that they're consecutive at this point."

¶ 22    The defendant now appeals his conviction and sentence arguing that the trial court erred in determining that the defendant's statements, made during the overhear telephone conversation, were tacit admissions and admitting those statements into evidence. The defendant further argues that the trial court improperly relied upon personal knowledge in denying the defendant's fourth posttrial motion to reconsider sentence. For the following reasons, we affirm the judgment of the trial court.

¶ 23                                   II. ANALYSIS

¶ 24                              A. Tacit Admissions

¶ 25    The first issue raised by the defendant is whether the trial court erroneously found that the statements made by the defendant during the overhear conversation were tacit admissions and, as such, erred in admitting those statements into evidence. Before proceeding in our analysis of this issue, we must first address the State's argument that the defendant has forfeited this issue on appeal for failing to raise the issue in a posttrial motion. The State argues that the defendant's

11

posttrial motions generally alleged that the trial court erred in denying the defendant's objections to the introduction of the State's evidence and testimony but failed to allege any error regarding tacit admissions. As such, the State argues that the defendant failed to sufficiently raise a posttrial objection to the trial court's determination that the defendant's statements in the overhear conversation were tacit admissions. The State further argues that the defendant has forfeited any claim that this court should review the issue under the doctrine of plain error by failing to argue plain error in his opening brief.

¶ 26     In his reply brief, the defendant argues that the defendant objected at trial when the State claimed that the defendant's statements were tacit admissions. The defendant also argues that his posttrial motions included an argument that the trial court erred in denying the defendant's objections to the State's evidence and testimony, which should be sufficient to overcome forfeiture. Finally, the defendant argues that, if the objection at trial and posttrial motions were not specific enough to overcome forfeiture, this court should consider the issue under the doctrine of plain error.

¶ 27     A defendant must both object at trial and raise the specific issue in a posttrial motion in order to preserve any alleged error for review. *People v. Woods*, 214 Ill. 2d 455, 470 (2005). Failure to raise an issue in a posttrial motion results in the forfeiture of that issue on review. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). In this matter, we agree with the State that the defendant failed to sufficiently raise a posttrial objection regarding tacit admissions.

¶ 28     Although the defendant generally alleged in his posttrial motions that the trial court erred in denying the defendant's objections to the State's evidence and testimony, in raising an objection, a defendant must be specific and cannot merely allege ambiguous boilerplate language that the trial court erred. *People v. Smith*, 139 Ill. App. 3d 21, 27 (1985). Rather, a defendant must recite,

12

with sufficient specificity, the alleged error so that the trial court has an opportunity to realistically assess any alleged error. *Id.* Unless the trial court is fully apprised of the specific instance, or instances, where the trial court is alleged to have erred, it cannot make an informed ruling on the defendant's motion. *Id.*

¶ 29 Here, the defendant made no specific allegations within his posttrial motions regarding tacit admissions, nor did the defendant even state, with any specificity, what evidence or testimony at trial that the defendant objected to and was allegedly overruled in error. The defendant simply made a general, all-encompassing allegation that the trial court erred in denying the defendant's objections to the introduction of the State's evidence and testimony. A trial court is not required to search the record to determine each and every incident where the defendant objected to the State's evidence or testimony, and was overruled by the trial court, to determine whether such ruling was in error. The defendant's general allegation regarding the State's evidence and testimony was inadequate to allow the trial court an opportunity to realistically assess any alleged error. As such, we find that the defendant's general allegation in his posttrial motions that the trial court erred in denying the defendant's objections to the introduction of the State's evidence and testimony was not specific enough to overcome forfeiture. Thus, we find that the defendant has forfeited this issue on appeal for failing to raise the issue in a posttrial motion.

¶ 30 Our determination that the defendant has forfeited this issue on appeal, however, does not end our analysis on this issue. The defendant argues, in his reply brief, that if this court found this issue to be forfeited, we consider this issue under the doctrine of plain error. The State argues that the defendant has forfeited any argument regarding plain error for failing to argue plain error in his opening brief. Generally, points not argued in an opening brief "are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing." Ill. S. Ct. R. 341(h)(7) (eff.

13

Oct. 1, 2020). While the defendant did not argue plain error in this opening brief, we note that plain error was raised in the defendant's reply brief. Our supreme court has clearly held that plain error may be raised by a defendant for the first time in his or her reply brief. *People v. Williams*, 193 Ill. 2d 306, 348 (2000); see also *People v. Bustos*, 2020 IL App (2d) 170497, ¶ 75. As such, we will address this issue under the doctrine of plain error.

¶ 31    The plain error doctrine is a narrow and limited exception to the general rule of procedural default which allows plain errors or defects affecting substantial rights to be noticed although the error or defect was not brought to the attention of the trial court. *People v. Hillier*, 237 Ill. 2d 539, 545 (2010). An otherwise unpreserved error may be reviewed under the plain error doctrine, codified in Illinois Supreme Court Rule 615 (eff. Jan. 1, 1967), if the defendant first demonstrates that a clear or obvious error occurred, and then shows that either (1) the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) the error was so egregious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence. *People v. Reese*, 2017 IL 120011, ¶ 60. The defendant has the burden of persuasion under either prong of the plain error doctrine, and if the defendant fails to meet his or her burden of persuasion, the reviewing court applies the procedural default. *Hillier*, 237 Ill. 2d at 545.

¶ 32    The initial step in conducting a plain error analysis is to determine whether a clear or obvious error occurred. *Reese*, 2017 IL 120011, ¶ 60. In this matter, the defendant argues that the trial court erred in finding the statements made by the defendant during the overhear conversation to be tacit admissions and, as such, erred in admitting those statements into evidence. We review the trial court's admission of evidence for an abuse of discretion. *People v. Ruiz*, 2019 IL App (1st) 152157, ¶ 34. A court abuses its discretion if the decision was arbitrary, fanciful, unreasonable, or

14

where no reasonable person would agree with the decision. *Id.* To the extent that the admissibility of the evidence requires the interpretation of a rule or its intended scope, our review is *de novo*. *Id.*

¶ 33    Illinois Rule of Evidence 801 (eff. Oct. 15, 2015) defines hearsay and also defines certain statements which are not hearsay. The rule defines "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Ill. R. Evid. 801(c) (eff. Oct. 15, 2015). The rule then provides that certain statements are not "hearsay." These certain statements are not exceptions to the rule against hearsay, but rather, are not hearsay to begin with. These certain statements include a "Statement by Party-Opponent." Ill. R. Evid. 801(d)(2) (eff. Oct. 15, 2015).

¶ 34    A statement by party-opponent includes "a statement of which the party has manifested an adoption or belief in its truth." Ill. R. Evid. 801(d)(2)(B) (eff. Oct. 15, 2015). An adopted statement includes a tacit admission, and the tacit admission rule is well established in our case law. *People v. Colon*, 2018 IL App (1st) 160120, ¶ 16. A tacit admission is not admitted as proof of the fact stated, but is admitted into evidence because the accused's silence, evasiveness, or unresponsiveness, when he might and naturally would deny if untrue, is regarded as circumstances tending to establish by tacit admission the truth of the statement. *People v. Cozzi*, 364 Ill. 20, 23 (1936).

¶ 35    In this matter, the audio recording of the overhear conversation, which included the defendant's statements, was admitted by the trial court into evidence over the defendant's hearsay objection. The defendant's hearsay objection was based on his argument at the beginning of trial that any statements of the alleged victim, after the age of 13 years and 3 months old, were inadmissible as hearsay. During the initial discussion of the defendant's hearsay objection, the trial

15

court confirmed that defense counsel was seeking "those hearsay statements to be excluded from evidence due to the fact that there is no other normal hearsay rules that would apply."

¶ 36 The trial court held that the audio recording of the overhear conversation consisted of direct statements made by the defendant and, as such, was not hearsay and was admissible. Thus, the trial court admitted the audio recording of the overhear conversation into evidence over the defendant's objection. In making its determination on the admissibility of the recording of the overhear conversation, the trial court addressed the defendant's earlier hearsay objection. There was no additional objection by the defendant regarding any other hearsay rule or tacit admissions, nor had there been any discussion by the trial court or either party concerning tacit admissions at the time the audio recording of the overhear conversation was admitted into evidence.

¶ 37 The defendant argues that, because the trial court specifically found the defendant's statements to be tacit admissions when issuing its findings at the conclusion of the trial, the record is irrefutable that the statements were admitted as tacit admissions. The defendant also argues that the statements could not have been admitted as a statement by party-opponent since all such statements may be excluded as a result of other rules of evidence, such as the doctrine of confessions, or the privilege against self-incrimination. Finally, the defendant argues that the State never argued that the statements were statements by a party-opponent and, therefore, the trial court never made a finding of fact on whether the statements were admissible as statements by party-opponent.

¶ 38 We acknowledge that the trial court did not specifically state that it was admitting the overhear conversation as a statement by party-opponent, but the trial court did state, "That is direct statements made by the defendant, it's not hearsay." Under Illinois Rule of Evidence 801(d)(2)(A) (eff. Oct. 15, 2015), a statement by party-opponent is not hearsay if it is offered against a party

16

and is that party's own statement. Here, the defendant's statements in the overhear conversation were his own statements being offered by the State against him and clearly fell within Rule 801(d)(2)(A). While we acknowledge that such statement may be excluded as a result of other rules of evidence, the defendant made no attempt to exclude the overhear conversation, or any of the defendant's statements contained therein, on any basis other than his initial hearsay objection regarding statements made by victim under the age of 13 years and 3 months of age. The first, and only, objection made by the defendant regarding the defendant's statements being perceived as tacit admissions was much later in the trial proceedings during the State's cross-examination of the defendant.

¶ 39    There is nothing in the record on appeal to indicate that the audio recording of the overhear conversation, or the defendant's statements therein, was being admitted as tacit admissions at the time that the overhear conversation was admitted. There was no objection to the overhear conversation being admitted based on tacit admissions, nor did the defendant make any limiting request regarding the defendant's statements in the overhear conversation. Where the record is not sufficient to support a claim of error, we will presume that the trial court acted appropriately and that its ruling was in conformity with the law. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). As such, we find that the trial court properly admitted the audio recording of the overhear conversation, and the defendant's statements therein, into evidence under Illinois Rule of Evidence 801(d)(2)(A) (eff. Oct. 15, 2015).

¶ 40    While we acknowledge that it is clear that the trial court later found several of the defendant's statements to be tacit admissions when issuing its ruling at the conclusion of the trial, whether evidence is properly admitted, however, is substantially different than the trier of fact's interpretation of the evidence. When a trial court is the trier of fact, a reviewing court presumes

17

that the trial court considered only admissible evidence and disregarded any inadmissible evidence in reaching its conclusion. *People v. Robinson*, 30 Ill. 2d 437, 439 (1964). Here, the defendant's statements were properly admitted, and a trier of fact may consider any evidence, including circumstantial evidence, if it has any tendency to prove a proposition in issue. *People v. Davis*, 248 Ill. App. 3d 886, 893 (1993). A tacit admission is regarded as circumstances tending to establish the truth of the statement. *Cozzi*, 364 Ill. at 23. As such, the trial court was entitled to consider the statements, regardless of whether the trier of fact determined the statements to be expressly or tacitly made, so long as the statements were properly admitted into evidence. See generally *People v. Campbell*, 332 Ill. App. 3d 721, 734 (2002).

¶ 41 Therefore, since we have found no clear or obvious error in the trial court's admission of the defendant's statements, we find that the defendant has failed to meet his burden of persuasion regarding plain error. Without reversible error, there can be no plain error. *People v. Naylor*, 229 Ill. 2d 584, 602 (2008). Therefore, the procedural default of forfeiture applies.

¶ 42                    B. Posttrial Motion to Reconsider

¶ 43 The defendant next argues that the trial court judge improperly used personal knowledge when denying the defendant's fourth posttrial motion to reconsider sentence. Specifically, the defendant argues that the trial court judge relied upon information provided by a neurological psychiatrist, who was a witness in a previous case in which the trial court judge was the defense attorney, regarding the impact that alcohol has on an individual's memory. The defendant acknowledges that the trial court judge had found him guilty of the offenses, and had sentenced him, but argues that he had filed a new posttrial motion after being sentenced. The defendant argues that, had the trial court judge not considered his personal knowledge, the trial court judge may have reached a different conclusion when ruling on the defendant's posttrial motion. As such, the

18

defendant argues that trial court judge's reliance on his personal knowledge constituted a denial of due process and was reversible error.

¶ 44    Due process does not permit a trial court judge to go outside the record, except for matters of which a court may take judicial notice, and the deliberations of a trial court judge are limited to the exhibits offered and admitted into evidence and the record made before him in open court. See *People v. Savage*, 5 Ill. 2d 296, 302 (1955); *People v. Wallenberg*, 24 Ill. 2d 350, 354 (1962). Even if a due process violation is determined to have occurred, this court must still consider whether the violation was harmless, as even due process violations are subject to harmless error review. *People v. Williams*, 2013 IL App (1st) 111116, ¶ 93. An error is harmless if it appears beyond a reasonable doubt that the error at issue did not contribute to the ruling obtained. *People v. Spicer*, 379 Ill. App. 3d 441, 456 (2007).

¶ 45    The defendant cites to *People v. Rivers*, 410 Ill. 410, 417 (1951) (any private investigation by the trial court, either during trial or while motion for new trial is pending, constitutes a denial of due process), *People v. Yarbrough*, 93 Ill. 2d 421, 426 (1982) (trial court suggested polygraph test subsequent to trial prior to ruling on motion for new trial), and *People v. Cooper*, 398 Ill. 468, 471-71 (1947) (private investigation by the trial court during trial constituted a denial of due process), in support of his argument. A review of these cases indicates that these cases are inapposite as they involve a trial court's reliance on a private investigation or an inappropriate suggestion, during trial or when a posttrial motion for new trial was pending. None of the cited cases indicate a denial of due process, or reversible error, where a trial court judge may have relied upon personal knowledge in denying a defendant's motion to reconsider sentence.

¶ 46    The defendant filed his fourth motion to reconsider on June 11, 2020, after being sentenced on June 9, 2020. All previous posttrial motions, that included a request for a new trial, had been

resolved prior to sentencing and prior to the trial court's hearing on the defendant's fourth motion to reconsider. The defendant's fourth motion to reconsider dealt solely with the defendant's request for reconsideration of his sentence and contained no arguments, or request, for a new trial. Therefore, the alleged error did not occur during trial or while the defendant had a pending posttrial motion for new trial.

¶ 47    The defendant's fourth motion to reconsider alleged that the trial court's sentence was excessive in light of the defendant's background, criminal history, and the facts of the case. At the trial court's hearing on the defendant's fourth motion to reconsider, the trial court judge noted that the defendant "qualified for a huge potential prison sentence" and that the reasons that the trial court judge had imposed "a very light sentence" was based on the defendant having no prior criminal history, the defendant's age, and the defendant's health issues. The trial court judge stated his basis for considering the defendant's sentence appropriate prior to his discussion of the neurological psychiatrist.

¶ 48    The fact that the trial court judge went on to add some personal observations, while such observations are highly discouraged, is of no consequence where the record demonstrates that the trial court judge otherwise considered proper sentencing factors. *People v. Bosley*, 197 Ill. App. 3d 215, 222 (1990). In this matter, the defendant does not argue that the trial court judge relied upon improper aggravating or mitigating factors in determining the defendant's sentence. We further note that the defendant's sentence was well within statutory guidelines and was only slightly over the statutory minimum sentence.

¶ 49    As stated above, the trial court judge had already set forth his reasoning regarding whether the sentence was excessive and had indicated that he found the sentence to be "a very light sentence" based on the defendant's history, age, and health *prior* to making his comments

20

regarding the neurological psychiatrist. Again, while such observations are highly discouraged, and a trial court judge's comments should be limited to the record before the judge, any error in the trial court judge's discussion of the neurological psychiatrist was harmless error, as it appears beyond a reasonable doubt that the error at issue did not contribute to the denial of the defendant's fourth motion to reconsider sentence ruling since the trial court judge had already made his findings regarding the defendant's fourth motion to reconsider prior to the discussion and had properly sentenced the defendant within the statutory guidelines.

¶ 50     Based on the above, we find no plain error in the trial court's admissions of the overhear conversation, and the defendant's statements therein, into evidence. We further find that the trial court judge's discussion regarding the neurological psychiatrist to be, if any, harmless error. As such, we affirm the trial court's judgment.

¶ 51                                             III. CONCLUSION

¶ 52     For the foregoing reasons, we affirm the judgment of the trial court of Fayette County.


¶ 53     Affirmed.